I dissent. I would affirm the trial judge's order, because it protects the legitimate interest that Central Bank possesses in its customer and employee relationships and does not illegally restrain Brannon and Puckett from exercising their lawful business endeavors.
The trial judge found that Central Bank has a protectable interest in this case, limited to protection against interference with the bank's customers and employees. He said:
 "This Court agrees that Central has a protectable interest in its customer relations and also its relations with its employees. However, if Brannon and Puckett agree and are required by this Court to refrain from soliciting customers from Central for a period of 2 years until July 7, 1991, and to also refrain from hiring employees of Central during the same period, Central will have achieved sufficient protection of its relations with its customers and employees from interference by Brannon and Puckett." *Page 833 
I agree with the trial court's assessment that this was a sufficient limitation to protect Central Bank's interest.
The majority has held that Central Bank has a protectable interest beyond its employees and customers. The majority finds that "the restriction regarding competition in the banking business is reasonably related to Central Bank's protectable interest, because the restriction is designed to protect Central Bank only in the area in which it has a legitimate interest: the banking industry." The majority believes Central Bank's claim that Brannon and Puckett have an intimate knowledge of Central Bank's techniques and strategies, and that they agreed, by signing the covenant not to compete, not to use this particular expertise by going into the banking business.
The trial judge, who heard the ore tenus testimony, determined that this claim is not borne out by the record:
 "The evidence presented indicates that Central is among the 4 largest banks within the State of Alabama and has developed and now provides a multitude of banking services which include many innovative marketing ideas. . . .
 "However, none of the services developed and offered by Central is unique to it. Every service offered by Central is also offered by a number of other banks and institutions. Central has itself referred to the intense competition which it faces in strong terms. . . .
". . . .
 "Central argues that because Brannon and Puckett had access to Central's short- and long-range plans and banking strategy as well as customer, product, and marketing information, it has a protectable interest in preventing Brannon and Puckett from engaging in the banking business anywhere in Alabama.
 "This Court disagrees with the premise that information concerning Central's products and marketing strategies are secret or incapable of being duplicated. As for short- and long-range plans, a period of approximately 11 months has now elapsed since either Brannon or Puckett had access to any short- or long-range plans contemplated by Central.
". . . .
 "Brannon and Puckett do have outstanding abilities and knowledge regarding the operation of a bank. However, such abilities and knowledge were developed by them as a result of their intelligence, diligence and experience. This Court concludes that had Brannon and Puckett worked for any other bank, they would have developed equally as well those same skills and abilities which they have now. Central is not able to prove that other banks in competition with Central do not have officers and employees with similar skills and abilities. Leaving to one side any special relationships with customers and employees, this Court concludes that there is no evidence that Brannon and Puckett in operating a new bank will provide any competition which will be stronger or more effective than that already in place from other banks and institutions."
I have carefully reviewed the record in this case, and I agree with the trial court's findings that none of the services developed and offered by Central Bank is unique to it, because every service offered by Central Bank is also offered by a number of other banks and institutions. Thus, there is no protectable interest in these employees' knowledge of those services. The testimony of various witnesses, including those called by Central Bank, established that new programs and products are routinely advertised to the public and that the advertising reveals the marketing strategy. Eleanor Strickland, Central Bank's vice-president for marketing research and advertising, testified that a bank's advertising about its products reveals the bank's marketing strategy as of the time the product is introduced. The testimony revealed that it is common practice for Central Bank employees to "shop" at competitive banks in order to gain information about products and that the regulators of the banking industry and others publish information that describes banking practices of all banks in the country. Bankers from different banks (including Central Bank) meet *Page 834 
periodically and exchange information. The testimony supports the decision of the trial court, not that of the majority.
This case was tried ore tenus.
 "Under the 'ore tenus rule,' a presumption of correctness accompanies the trial court's judgment when it has made findings of fact based on oral testimony without a jury, and its judgment will not be reversed unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from the evidence. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala. 1987); McCrary v. Butler, 540 So.2d 736 (Ala. 1989). The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment. McCrary v. Butler, supra; Jones v. Jones, 470 So.2d 1207 (Ala. 1985)."
Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13
(Ala. 1989). It is clear that there was credible evidence to support the judgment of the trial court.
The majority states that the contract "does not preclude Brannon and Puckett from pursuing work outside of banking." However, banking is the work they know, and to restrict them from competing in the banking business clearly imposes an undue hardship upon them, in violation of our holding in James S.Kemper Co. v. Cox Associates, 434 So.2d at 1384.
For the reasons stated above, I respectfully dissent.
INGRAM, J., concurs.