PER CURIAM.
 

 Hartford Underwriters Insurance Company (“Hartford”) appeals from the trial court’s judgment against it, and its subsequent denial of Hartford’s motion for a judgment as a matter of law (“JML”). We reverse and remand.
 

 Facts and Procedural History
 

 T & W Construction, LLC, obtained workers’ compensation insurance through the Jack Green Insurance Agency (“the Green Agency”). The Green Agency procured the workers’ compensation insurance for T & W through the assigned-risk pool managed by the National Counsel on Compensation Insurance (“NCCI”). NCCI assigned T
 
 &
 
 W’s risk to Hartford. Travelers Insurance Company (“Travelers”), through a contractual arrangement with Hartford, managed the underwriting of and claims under Hartford’s assigned-risk policies and acted as Hartford’s agent in connection with Dave Henry Reed’s claim under the Hartford policy.
 

 Hartford required T & W to pay an estimated annual premium up front for its workers’ compensation insurance policy (“the Hartford policy”). Hartford reserved the right to conduct an audit when the Hartford policy ended to determine the amount of the final premium. T & W paid a portion of the estimated annual
 
 *744
 
 premium for the Hartford policy; the remainder was financed through American Liberty Financial Services, Inc. (“American Liberty”). A representative of the Green Agency signed the premium-finance agreement on behalf of T & W. Timothy Poates, a principal of T & W, testified that he was not aware of the premium-finance agreement and that he did not know if T
 
 &
 
 W had authorized the Green Agency to enter into such an agreement on its behalf. T
 
 &
 
 W paid the Green Agency the monthly installments required by the premium-finance agreement, and the Green Agency would, in turn, pay American Liberty on T & W’s behalf. In the event T
 
 &
 
 W failed to timely pay its monthly installments required under the premium-finance agreement, the premium-finance agreement provided American Liberty the authority to cancel the Hartford policy.
 

 Hartford issued the Hartford policy effective from July 23, 2004, to July 23, 2005. The Hartford policy insured T & W for workers’ compensation liability resulting from an employee’s “bodily injury by accident,” provided that the bodily injury by accident occurred during the “policy period.” The Hartford policy also contained the following cancellation provision:
 

 “D. Cancelation [sic],
 

 [[Image here]]
 

 “2. We
 
 may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation [sic] is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.
 

 “3. The policy period will end on the day and hour stated in the cancelation [sic] notice.”
 

 T & W’s “mailing address shown in Item 1 of the Information Page” of the Hartford policy was “3828 Isabella Lane, Mobile, AL 33618.” Poates confirmed that this address was T & W’s correct address.
 

 In December 2004, T <& W defaulted on its premium payment. On December 21, 2004, American Liberty mailed to T
 
 &
 
 W at the address above a notice of intent to cancel the Hartford policy on January 5, 2005, dependant upon T
 
 &
 
 W’s payment of the past-due monthly installment. American Liberty mailed another notice of intent to cancel the Hartford policy to T & W on December 27, 2004. Poates testified that he could not remember if T & W had received either notice. On January 5, 2005, American Liberty, not having received payment from T & W, mailed T & W and faxed Hartford a notice of cancellation of the Hartford policy. The notice of cancellation stated, in pertinent part:
 

 “*
 
 ⅜NOTICE OF CANCELLATION-NONPAYMENT OF PREMIUM FINANCED POLICY-
 
 *
 

 [[Image here]]
 

 “This policy has been financed by [American Liberty]. [American Liberty] has exercised its right to cancel this policy as provided in its agreement with [T & W], due to [T & W’s] delinquent payment status.
 

 [[Image here]]
 

 “PLEASE NOTE:
 
 [Hartford] is under no obligation to reinstate this policy in the event [American Liberty] should rescind their cancellation request.”
 

 Poates testified that he did not recall receiving the notice of the cancellation of the Hartford policy from American Liberty.
 

 Upon receipt of American Liberty’s cancellation request, Traveler, on behalf of Hartford, mailed T & W and the Green Agency a notice dated January 6, 2005, notifying them of Hartford’s intent to cancel the Hartford policy effective January 21, 2005.
 

 
 *745
 
 Sue Flurry, a supervisor of a group of account-manager underwriters for Travelers, testified concerning Travelers’ automated method for producing and mailing cancellation notices. Flurry testified that cancellation notices are computer generated, folded, and stuffed into a window envelope, which has the appropriate postage affixed to it. Flurry testified that the cancellation process includes the creation of an “affidavit of mailing,” which lists the recipients of the cancellation notices, includes a date stamp, and contains the following certification by a Travelers employee:
 

 “[E]ach cancellation entry on this page of the master computer list of cancellations has a corresponding envelope containing an original notice of cancellation showing the name and address of the policyholder or payer in the window of the envelope and that such envelope was submitted to the United States Postal Service.”
 

 The affidavit of mailing for the cancellation notice was signed. Flurry also testified that a Travelers employee “takes [the] affidavit of mailing and ... the envelopes that were produced in order to verify that the addressee shows in the window, that the address [on the cancellation notice] is the same [as the address on the affidavit of mailing], [and] that the appropriate postage has been affixed to the envelope.” The affidavit of mailing shows that T & W’s cancellation notice was sent. to the address specified in the Hartford policy. Further, Flurry testified that the envelope in which the cancellation notice was mailed included a .return address and that the notice was not returned as undeliverable. Travelers also mailed the Green Agency a copy of the cancellation notice, which the Green Agency received.
 

 On January 18, 2005, T
 
 &
 
 W made a late payment to American Liberty. Upon receipt of the late payment, American Liberty faxed Hartford a request to reinstate the Hartford policy. Hartford did not reinstate the Hai'tford policy, but, as stated in its notice of cancellation, canceled the Hartford policy on January 21, 2005.
 

 On February 17, 2005, Travelers, on behalf of Hartford, mailed the Green Agency a document titled “Cancellation Change Slip — Commercial.” This document showed the “eff. date canc.” of the Hartford policy as “01/21/05,” and the “Reason for Cancellation” as “Finance Company Request — Non Payment.”
 

 In April 2005, Hartford audited T & W to determine the final premium for the canceled Hartford policy. Hartford hired an auditing firm to conduct the audit, which met with T & W’s principals, Poates and Robert Williams, to review T & W’s records. During the audit, Poates signed a document titled “Verification of Visit,” which indicated that the “policy period” of the Hartford policy was “7/23/04 to 1/21/05,” Poates testified at trial that he was unsure of the purpose of the audit but that he thought it was “to renew the [Hartford] policy.” Poates also testified that he was not told that the audit was a cancellation audit and that he did not know that the Hartford policy had been canceled.
 

 The audit showed that T & W owed Hartford an additional amount for the premium. Travelers, on behalf of Hartford, mailed T & W and the Green Agency a “Premium Adjustment Notice” showing the total earned premium. The premium-adjustment notice contained a reference to the “Cancellation Audit 07/23/04 to 01/21/05.”
 

 On May 18, 2005, Dave Henry Reed, an employee of T & W, was injured within the line and scope of his employment with T & W. Reed filed a claim for worker’s compensation benefits under the Hartford poli
 
 *746
 
 cy. Reed’s claim was denied because the Hartford policy had been canceled before Reed’s injury occurred.
 

 As a result of the denial of Reed’s claim, Reed sued T & W for worker’s compensation benefits. In that action, the trial court awarded Reed $364,526.40 in worker’s -compensation benefits. In addition to the worker’s compensation benefits, Reed also- requested that the trial court impose against T & W the statutory penalty under § 25-5-8(e), Ala.Code 1975, which provides, in pertinent part:
 

 “[A]n employer required to secure the payment of compensation under this section who fails to secure the compensation shall be liable for two times the amount of compensation which would have otherwise been payable for injury or death to an employee.”
 

 The trial court imposed the statutory penalty against T & W in the amount of $364,526.40 for T & W’s failure to secure the payment of compensation. Reed’s total award was thus $729,052.80. T & W consented to the judgment. In exchange for an assignment of T
 
 &
 
 W’s rights to any potential insurance coverage, Reed agreed not to collect the judgment from T
 
 &
 
 W.
 

 On March 19, 2007, Reed, as the assign-ee of T & W’s rights, filed the present action against Hartford seeking coverage under the Hartford policy. Reed alleged breach of contract, bad-faith refusal to pay a claim, and fraud. In the same action, Reed also sued American Liberty, alleging breach of contract, negligence, and wantonness; and the Green Agency, alleging breach of contract, negligence, wantonness, and breach of fiduciary duty. On March 14, 2008, Hartford filed a motion for a summary judgment. The trial court entered a summary judgment for Hartford on Reed’s bad-faith and fraud claims, but denied Hartford’s summary-judgment motion on Reed’s breach-of-contract claim.
 

 The action proceeded to trial before a jury. Hartford moved for a JML on Reed’s breach-of-contract claim at the close of Reed’s case. Hartford’s motion for a JML was denied, and the trial court also struck Hartford’s judicial-estoppel defense. American Liberty and the Green Agency also filed motions for a JML concerning all claims against them. The trial court granted American Liberty’s motion for a JML on Reed’s wantonness claim against it, and the trial court granted the Green Agency’s motion for a JML on Reed’s wantonness and breach-of-fiduciary-duty claims against it.
 

 Hartford again moved for a JML on Reed’s breach-of-contract claim against it at the close of all the evidence. The trial court denied Hartford’s motion. American Liberty and the Green
 
 Agency
 
 also filed motions for a JML on Reed’s remaining claims against them at the close of all the evidence, which the trial court granted. Reed and Hartford agreed to submit the issue of damages to the trial court in the event the jury found for Reed.
 

 The trial court submitted the ease to the jury on Reed’s breach-of-contract claim against Hartford. The jury returned a verdict in favor of Reed, and the trial court entered judgment against Hartford for $729,052.80. In its order entering judgment in favor of Reed, the trial court stated:
 

 “The jury after deliberation and verdict having found in favor of the plaintiff, Dave Reed and against the defendant Hartford Underwriters Insurance Company, the Court hereby renders judgment in favor of plaintiff Dave Reed and against defendant Hartford Underwriters Insurance Company. Based upon the evidence in this case and the jury’s verdict, the Court finds therefore that Hartford Underwriters Insurance Company’s policy of workers’ compensa
 
 *747
 
 tion insurance was in effect at the time of Dave Reed’s injury on May 18, 2005. See
 
 Institute of London Companies v. Valley Equipment,
 
 660 So.2d 1000 (Ala.Civ.App.1995).
 

 “Prior to the submission of this case to the jury, the parties agreed to submit the issue of damages to the Court for resolution in the event of a verdict for the plaintiff. Hartford contends that if it is liable at all, its damages should only be the amount of the permanent and total injury award in Dave Reed’s workers’ compensation case, i.e., $828,926.40C
 
 [1]
 
 ]. Plaintiff Reed, for his part argues that as the assignee of Hartford’s insured, T & W Construction L.L.C., he is entitled to receive total compensation benefits plus the penalty assessed by the Circuit Court for T & W’s failure to secure the payment of compensation under § 25-5-8(e), Code of Alabama, 1975.
 

 “After considering the briefs and arguments of the parties, the Court finds that a fundamental principle of contract law is that ‘damages for the breach of contract is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.’ See
 
 Brendle Fire Equipment Inc. v. Electronic Engineers, Inc.,
 
 454 So.2d 1032 (Ala.Civ.App.1984). But for the breach of contract by Hartford, T
 
 &
 
 W Inc., would not have suffered the additional penalty imposed by the Circuit Court. Accordingly, this Court renders judgment in favor of Dave Reed and against defendant Hartford Underwriters Insurance Company in the amount of $729,052.80. Additionally, the Court finds that Hartford is liable for past and future medical benefits, as well as vocational benefits under the Alabama Worker’s Compensation Law for injures sustained by Dave Reed on or about May 18, 2005.”
 

 Hartford then filed a rénewed motion for a JML or, in the alternative, for a new trial, which the trial court denied. Hartford appealed.
 

 Standard of Review
 

 In
 
 American National Fire Insurance Co. v. Hughes,
 
 624- So.2d 1362 (Ala.1993), this Court stated the standard that applies to appellate review' of a trial court’s ruling on a motion for a JML:
 

 “The standard of review applicable to a ruling on a motion for JNOV [now referred to as a postverdict JML] is identical to the standard used by the trial court in granting or denying a motion for directed verdict [now referred to as a JML]. Thus, in reviewing the trial court’s ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.”
 

 624 So.2d at 1366 (citations omitted).
 

 The rule regarding cancellation of an insurance policy requires that “the insurer setting up cancellation as a defense on a policy has the burden of proving by clear and convincing evidence that the notice of cancellation was properly mailed to the insured.”
 
 Currie v. Great Cent. Ins. Co.,
 
 374 So.2d 1330, 1331 (Ala.1979) (citing
 
 Harrell v. Alabama Farm Bureau Mut. Cas. Ins. Co.,
 
 287 Ala. 259, 251 So.2d 220 (1971)).
 

 
 *748
 

 Discussion
 

 Hartford argues, among other things, that the trial court erred in denying its motion for a JML based on its contention that the undisputed evidence shows that the Hartford policy was canceled before Reed was injured. Reed relies on
 
 Institute of London Cos. v. Valley Equipment, Inc.,
 
 660 So.2d 1000 (Ala.Civ.App.1995), and argues that § 27-40-11, Ala.Code 1975, “contains specific requirements regarding cancellation by or at the request of a premium finance company like [American Liberty].... Under the proper interpretation of [§ 27-40-11], the burden is on the insurer alleging cancellation as a defense to prove the finance company strictly complied with all the requirements of [§ 27-40-11] before effecting a cancellation.” (Reed’s brief, at 39-40.) Reed’s argument is based on the assumption that if the only reason the insurer is canceling the policy is the request of a premium-finance company, the policy must be canceled in accordance with § 27-40-11. Hartford argues that, regardless of American Liberty’s request to cancel the Hartford policy, Hartford effectively canceled the Hartford policy in accordance with the terms of the policy. Therefore, Hartford argues, American Liberty’s compliance with § 27-40-11 is inconsequential; we agree.
 

 The law concerning an insurer’s right to cancel a policy is well settled: “[T]he right vel non of cancellation is a matter of contract.... The question of the motive of the parties or company in that behalf is immaterial when there is a cancellation under the. terms of the contract.”
 
 Pacific Mut. Life Ins. Co. of California v. Strange,
 
 226 Ala. 98, 100, 145 So. 425, 426 (1932). Further,
 

 “[i]t is well settled in Alabama that ‘in an action on an insurance policy when the insurer sets up cancellation as a defense, the insurer has the burden of proving the policy was canceled.’
 
 Mid-State Homes, Inc. v. Cherokee Ins. Co.,
 
 51 Ala.App. 247, 248, 284 So.2d 274, 275 (1973). However, it is ‘equally true that in the absence of a restrictive statutory provision, the parties to an insurance contract may specify the method by which it may be canceled and the parties are thereby bound. Put another way, an insurance policy may be canceled according to its terms.’ 51 Ala.App. at 249 284 So.2d at 276. (Citation omitted).”
 

 American Interstate Ins. Co. v. Kelley,
 
 797 So.2d 479, 482 (Ala.Civ.App.2000). See also
 
 Green v. Standard Fire Ins. Co. of Alabama,
 
 398 So.2d 671, 675 (Ala.1981) (holding that “[i]t is well settled in Alabama law that the right of the insurer to cancel an insurance policy is strictly construed and the condition imposed upon it with respect to giving notice of cancellation must be strictly performed”).
 

 Regardless of Hartford’s motives or reasons for canceling the Hartford policy, the dispositive issue before this Court is whether Hartford produced sufficient evidence at trial indicating that the Hartford policy had been canceled and was not in effect at the time of Reed’s injury. Hartford argues that it produced sufficient evidence that it had canceled the Hartford policy according to its terms. According to the terms of the Hartford policy, Hartford could cancel the policy by “mail[ing] or delivering] to [T & W] not less than ten days advance written notice stating when the cancelation [sic] is to take effect.” The Hartford policy does not condition or limit Hartford’s right to cancel the policy in any way.
 

 Hartford argues that it presented evidence indicating that it had mailed the notice of cancellation to T & W’s proper address and that T & W failed to rebut said evidence. Hartford relies on
 

 
 *749
 
 “the common-law principle generally referred to as the ‘mailbox rule’ or the ‘letter presumption.’ As articulated by this Court in
 
 Corinth Bank & Trust Co. v. Cochran,
 
 219 Ala. 81, 83, 121 So. 66, 67 (1929), this principle stands for the proposition that
 

 “ ‘[a] letter properly addressed, stamped, and mailed is presumed to have been received in due course. Evidence denying the receipt of the letter does not render the evidence of the mailing inadmissible. Neither is it conclusive. Whether it was so mailed and received becomes a jury question.’ ”
 

 Sullivan v. Eastern Health Sys., Inc.,
 
 953 So.2d 355, 360 (Ala.2006).
 

 Sue Flurry’s testimony and the exhibits presented by Hartford at trial constitute clear and convincing evidence that Hartford “properly addressed, stamped, and mailed” the cancellation notice to T & W. As a result, a presumption arises that T & W received the cancellation notice. The presumption could have been rebutted by T
 
 &
 
 W’s denial that it received the cancellation notice. However, T & W did not deny receipt of the cancellation notice. Rather, Poates, as T & W’s representative, testified as follows:
 

 “Q [Reed’s attorney]: I show you a document that is exhibit 23-A. Are you familiar with this document, Mr. Poates? It says, ‘Notice of Cancellation Nonpayment of Premium Finance Policy.’
 

 “A [Poates]: I know I have seen it since, you know, the lawsuits and everything.
 

 “Q: All right. Do you recall receiving the notice of cancellation from the Hartford in that mail before January 21, 2005?
 

 “A: That I can remember, no, sir.
 

 “Q: It says the date that it was mailed, date of issue is January 6th of ‘05. So that would have been obviously early in the year of ‘05. Anything about that-jar your recollection?
 

 ■ “A: No, sir. That I can remember, no, sir; not to say that it didn’t come in.
 

 “Q: Right. And Mr. Thurber [Hartford’s attorney] took your deposition and asked you a series of questions about that. How strong, how weak, just tell us your recollection of whether or not you did, as best you can, whether or not you received that?
 

 “[Hartford’s attorney]: Judge, I asked and answered. He said three times he did not remember.
 

 “THE COURT: Overruled. You can cross-examine.
 

 “A [Poates]: I don’t remember.
 

 [[Image here]]
 

 “Q [Hartford’s attorney]: This is a letter dated, which we have already seen before, January 6. That is the letter we have talked about before, correct?
 

 “A [Poates]: Yes, sir.
 

 “Q: It is addressed to T & W Construction Company. You said you do not remember receiving that notice-of cancellation?
 

 “A: Correct. I don’t remember.
 

 “Q: Was that T & W’s mailing address at that time, 3828 Isabella Lane, Mobile, Alabama 36618?
 

 “A: Yes, sir.
 

 “Q: So that mailing address is correct?
 

 “A: Yes, sir.
 

 [[Image here]]
 

 “Q: [Hartford’s] Exhibit 22. Do you recognize that letter?
 

 “A: It is a notice of cancellation.
 

 [[Image here]]
 

 “Q: Did you receive that letter?
 

 “A: Not that I can recall.
 

 
 *750
 
 [[Image here]]
 

 “Q [Reed’s attorney]: You are not denying that you received these letters, particularly this letter, Notice of Cancellation, the one that was just up there, my exhibit 22? You are not denying that, are you?
 

 “A [Poates]: I can’t deny it nor confirm it.”
 

 Reed fails to point to anything in the record indicating that T <& W denies having received the cancellation notice from Hartford.
 

 Hartford met its burden by providing clear and convincing evidence that it canceled the Hartford policy under the terms of the policy and that that cancellation was proper. Therefore, the trial court’s judgment denying Hartford’s motion for a JML on the breach-of-contract claim was error, and we reverse it.
 

 Reed argues that in order for this Court to rule in favor of Hartford, it is necessary to overrule
 
 Valley Equipment.
 
 However,
 
 Valley Equipment
 
 is distinguishable from the present case, and our decision today does not effect its precedential value. In
 
 Valley Equipment,
 
 an insured procured “physical damage insurance” through an insurer and financed the premium through a premium-finance company. The insured and the premium-finance company entered into a premium-finance agreement, which contained a power of attorney, enabling the premium-finance company to cancel the policy. The insured defaulted on its payments to the premium-finance company, and the premium-finance company requested that the insurer cancel the policy; the insurer complied with the premium-finance company’s request. Subsequently, the insured filed a claim, which the insurer denied based upon the prior cancellation of the insurance policy. The insured sued to recover under the policy. The trial court found that the premium-finance company failed to comply with § 27-40-11 and granted the insured’s summary-judgment motion. The insurer appealed.
 

 Before the Court of Civil Appeals, the insurer never raised the argument that the insurance policy had been properly canceled under the terms of the policy. Rather, the insurer argued that the policy was properly canceled under the provisions of § 27-40-11. The Court of Civil Appeals affirmed the trial court’s judgment, holding that the premium-finance company’s failure to adhere to the requirements of § 27-40-11 rendered its attempt to cancel the insurance policy ineffective.
 

 This case is distinguishable from
 
 Valley Equipment
 
 because, unlike the insurer in
 
 Valley Equipment,
 
 Hartford argued before the trial court and before this Court that it properly canceled the Hartford policy in accordance with the terms of the Hartford policy. Therefore, the disposi-tive issue here is whether Hartford canceled the Hartford policy in accordance with the terms of the policy. We hold that it did.
 

 Conclusion
 

 Based on the foregoing, this Court reverses the trial court’s judgment and remands this case for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and WOODALL, SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . The $328,926.40 amount does not include "[ajccrued benefits of 89 weeks [at] comp, rate of $400 week,” which total $35,600. It includes only the "[present value] of remaining 2434.64 weeks (822.316) x $400.00/ week.” The addition of the $35,600 would bring the total award to $364,526.40.