PARKER, Justice.
 

 Nationwide Mutual Insurance Company (“Nationwide”) appeals from the trial court’s judgment denying its “renewed motion for a judgment as a matter of law or, in the alternative, motion for [a] judgment notwithstanding the verdict.”
 
 [1]
 
 We reverse and render a judgment for Nationwide.
 

 Facts and Procedural Histo'ry
 

 In 1997, J-Mar Machine & Pump, Inc. (“J-Mar”), a vacuum and centrifugal-pump repair shop located in Birmingham, procured a commercial liability and property insurance policy (“the insurance policy”) from Nationwide that afforded $100,000 in personal-property coverage. At issue in this case is the cancellation of the insurance policy by Nationwide. The pertinent portion of the insurance policy stated:
 

 “A. Cancellation
 

 “1. The first Named Insured shown in the Declarations [J-Mar] may cancel this policy by mailing or delivering to [Nationwide] advance written notice of cancellation.
 

 “2. [Nationwide] may cancel this policy by mailing or delivering to [J-Mar] written notice of cancellation at least:
 

 “a. 10 days before the effective date of cancellation if [Nationwide] cancel[s] for nonpayment of premium; or
 

 “b. 80 days before the effective date of cancellation if [Nationwide] cancels] for any other reason.
 

 “3. [Nationwide] will mail or deliver [its] notice to [J-Mar’s] last mailing address known to [Nationwide].
 

 “4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
 

 “5. If this policy is cancelled, [Nationwide] will send [J-Mar] any premium refund due. If [Nationwide] can-celts], the refund will be pro rata. If [J-Mar] cancels, the refund may be less than pro rata. The cancellation will be effective even if [Nationwide has] not made or offered a refund.
 

 “6. If notice is mailed, proof of mailing will be sufficient proof of notice.”
 

 In early 2004, Nationwide’s underwriter ordered an inspection of J-Mar’s facilities in anticipation of its yearly renewal of the insurance policy, which was up for renewal on March 29, 2004. The inspection was conducted by an independent surveyor in March 2004, and the inspection report was sent to Nationwide, which received it on March 23, 2004. The report indicated the following problems with J-Mar’s facilities: “aluminum wiring”; “[s]pace heaters that are not properly vented”; “[f]ire extinguishers that have not been serviced”; and “[hjousekeeping is poor, with large pump and machine parts through the floor area and on the outside grounds.” The insurance policy was renewed on March 29, 2004.
 

 On September 30, 2004, Nationwide mailed J-Mar a notice of cancellation that stated, in pertinent part: “This is required notice ... that your policy is terminated at 12:01 a.m. on [November 1, 2004].” The notice of cancellation stated that the insurance policy was being terminated based on the “unfavorable ... report” prepared by
 
 *1251
 
 the independent surveyor. J-Mar’s president, Gerald Jones, testified that he received the notice of cancellation and that he knew that Nationwide was going to cancel the insurance policy effective November 1, 2004. Jones then telephoned his local Nationwide agent, John Allen Lowe, who had sold J-Mar the insurance policy and had serviced it for the duration of the policy, and asked Lowe about the notice of cancellation. Jones testified that “[Lowe] wasn’t aware of the [notice of cancellation] and [Lowe] said that ... he’s got to find out about it and he’d take care of it, don’t worry about it, so I didn’t.” In his deposition testimony, Jones testified that J-Mar never received any document from Nationwide indicating that the insurance policy had been reinstated:
 

 “[Nationwide’s trial counsel:] Did you ever receive any letters from Nationwide after the [notice of cancellation] ... that ever said that your policy was reinstated?
 

 “[Jones:] No, ma’am.
 

 “Q. Did you ever get another copy of a policy from Nationwide showing that the policy was put back into effect?
 

 “A. No, ma’am.
 

 “Q. Did you ever get a document from Mr. Lowe, and I’m talking about a written document, that ever said that your policy had been reinstated?
 

 “A. No, ma’am.”
 

 Jones’s deposition testimony also indicates that Lowe had informed him that Nationwide would not reinstate the insurance policy:
 

 “[Nationwide’s trial counsel:] Do you remember ever being told by Mr. Lowe that he had talked to the underwriters and they were not willing to reinstate it?
 

 “[Jones:] Yes.”
 

 On or about December 19, 2004, property belonging to J-Mar, which had been covered by the insurance policy, was stolen from J-Mar’s premises. On December 20, 2004, Jones telephoned Lowe to notify him of the theft and to inquire about the state of the insurance policy and whether it had been reinstated; Lowe informed Jones that it had not been reinstated. Jones also testified that that was not the first time Lowe told him the insurance policy had not been reinstated but that Lowe had informed him of this sometime near “the end of October.”
 

 On December 24, 2004, Jones attempted to pay the quarterly premium for the canceled insurance policy by sending Lowe a check in the amount of $313, which Lowe deposited. J-Mar had not received a billing statement from Nationwide indicating that the premium was due. Rather, Jones had paid the premium based on a billing statement J-Mar had received on May 13, 2004, before the insurance policy was canceled, notifying J-Mar that its next premium payment would be due on December 29, 2004. Nationwide refunded $111 of the $313 to J-Mar, noting that the cancellation date of the insurance policy was November 1, 2004, and indicating as the reason for the refunded amount: “payment more than required on a cancelled policy.”
 

 Despite Jones’s knowledge that the insurance policy had been canceled, J-Mar filed a claim with Nationwide under the insurance policy for the stolen property. On June 10, 2005, Nationwide denied J-Mar’s claim because, Nationwide stated, “the [insurance] policy was not active for this date of loss.”
 

 On December 2, 2005, J-Mar sued Nationwide and Lowe. J-Mar alleged claims of breach of contract and bad-faith failure to pay an insurance claim against Nationwide and alleged that Lowe had “negligently caused or negligently allowed a purported cancellation of the [insurance] policy ... to go uncorrected.... ” On De
 
 *1252
 
 cember 14, 2006, Nationwide and Lowe filed motions for a summary judgment, which the trial court denied on May 18, 2009. On September 22, 2009, Nationwide and Lowe filed a “joint motion to reconsider” the trial court’s judgment denying their summary-judgment motions. The trial court denied Nationwide and Lowe’s motion to reconsider on November 5, 2009.
 

 The trial court conducted a jury trial, which began on November 30, 2009. At the close of J-Mar’s case, Nationwide filed a written motion for a judgment as a matter of law, which the trial court denied. Nationwide also made an oral motion for a judgment as a matter of law at the close of all the evidence, which the trial court also denied. Also at the close of all the evidence, J-Mar orally moved to dismiss its claim against Lowe, with prejudice. However, the trial court did not enter an actual order, oral or written, dismissing Lowe. On December 4, 2009, the trial court entered a judgment on the jury’s verdict in favor of J-Mar and against Nationwide for $416,466.87. Nationwide appealed.
 

 On August 3, 2010, this Court entered an order remanding the cause to the trial court, stating that the judgment appealed from was not a final judgment because the claims against Lowe had not been adjudicated and giving the trial court options, one of which was to dismiss the claims against Lowe. On August 10, 2010, the trial court entered an order dismissing, with prejudice, “every claim alleged by [J-Mar] against [Lowe].” This Court then reinstated the appeal.
 

 Standard of Review
 

 In
 
 A.T. Stephens Enterprises, Inc. v. Johns,
 
 757 So.2d 416, 419 (Ala.2000), we held:
 

 “In reviewing a ruling on a motion for a judgment as a matter of law, this Court is bound by the same standard as the trial court:
 

 “ “We must determine whether the party with the burden of proof has produced sufficient evidence of a conflict warranting a jury’s consideration.
 
 Macon County Comm’n v. Sanders,
 
 555 So.2d 1054, 1056 (Ala.1990);
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988). The evidence must be viewed in a light most favorable to ... the nonmoving party.
 
 Twilley v. Daubert Coated Products, Inc.,
 
 536 So.2d 1364, 1367 (Ala.1988);
 
 Wadsworth v. Yancey Bros. Co.,
 
 423 So.2d 1343, 1345 (Ala.1982).’
 

 “Continental Eagle Corp. v. Mokrzycki,
 
 611 So.2d 313, 319 (Ala.1992).”
 

 Discussion
 

 Nationwide argues that the trial court erred in denying its motion for a judgment as a matter of law based on its contention that the undisputed evidence shows that the insurance policy had been canceled under the terms of the policy before J-Mar’s claim arose. We agree.
 

 This Court recently set forth the law concerning an insurer’s right to cancel an insurance policy in
 
 Hartford Underwriters Insurance Co. v. Reed,
 
 57 So.3d 742 (Ala.2010):
 

 “The law concerning an insurer’s right to cancel a policy is well settled: ‘[T]he right vel non of cancellation is a matter of contract.... The question of the motive of the parties or company in that behalf is immaterial when there is a cancellation under the terms of the contract.’
 
 Pacific Mut. Life Ins. Co. of California v. Strange,
 
 226 Ala. 98, 100, 145 So. 425, 426 (1932). Further,
 

 “ ‘[i]t is well settled in Alabama that “in an action on an insurance policy when the insurer sets up cancellation as a defense, the insurer has the burden of proving the policy was can-
 

 
 *1253
 
 celed.”
 
 Mid-State Homes, Inc. v. Cherokee Ins. Co.,
 
 51 Ala.App. 247, 248, 284 So.2d 274, 275 (1973). However, it is “equally true that in- the absence of a restrictive statutory provision, the parties to an insurance contract may specify the method by which it may be canceled and the parties are thereby bound. Put another way, an insurance policy may be canceled according to its terms.” 51 Ala.App. at 249, 284 So.2d at 276. (Citation omitted).’
 

 “American Interstate Ins. Co. v. Kelley,
 
 797 So.2d 479, 482 (Ala.Civ.App.2000).
 
 See also Green v. Standard Fire Ins. Co. of Alabama,
 
 398 So.2d 671, 675 (Ala.1981) (holding that ‘[i]t is well settled in Alabama law that the right of the insurer to cancel an insurance policy is strictly construed and the condition imposed upon it with respect to giving notice of cancellation must be strictly performed’).”
 

 Hartford,
 
 57 So.3d at 748.
 

 Regardless of its motives or reasons, Nationwide undisputedly canceled the insurance policy according to the terms of the policy. It is undisputed that Nationwide sent J-Mar a cancellation notice 30 days before the insurance policy was to be canceled and that J-Mar received the notice. Therefore, the insurance policy was canceled pursuant to its terms effective November 1, 2004. Further, Jones testified that at the time the theft occurred and at the time he filed his claim with Nationwide he knew that the insurance policy had been canceled and that it had not been reinstated. Accordingly, the trial court’s judgment denying Nation-wide’s judgment as a matter of law on the basis that J-Mar had presented sufficient evidence of a conflict warranting a jury’s consideration concerning its claims of breach of contract and bad faith was in error and thus is due to be reversed.
 

 We note that, in its appellate brief before this Court, J-Mar appears to argue that Nationwide had waived its prior cancellation of the insurance policy by accepting J-Mar’s check paying the premiums for the canceled insurance policy. However, it is undisputed that Nationwide refunded a pro rata amount of the premium payment consistent with the terms of the insurance policy. J-Mar does not make an argument on appeal that the refunded amount was insufficient. Therefore, there is no merit to this argument. J-Mar also appears to argue that its “reasonable expectations” barred Nationwide’s cancellation of the insurance policy. However, J-Mar fails to cite any applicable legal authority; thus, we need not consider this claim.
 
 See
 
 Rule 28(a)(10), Ala. R.App. P. Moreover, the rule of reasonable expectations is a rule of construction that applies to interpret ambiguous insurance policies and has no application to this case.
 
 See State Farm Fire & Cas. Co. v. Slade,
 
 747 So.2d 293, 311 (Ala.1999).
 

 Conclusion
 

 Based on the foregoing, this Court reverses the trial court’s judgment denying Nationwide’s motion for a judgment as a matter of law and renders a judgment in favor of Nationwide.
 

 REVERSED AND JUDGMENT RENDERED.
 

 COBB, C.J., and STUART, SHAW, and WISE, JJ., concur.
 

 [1]
 

 . Effective October 1, 1995, Rule 50, Ala. R. Civ. P., was amended to rename a "motion for a judgment notwithstanding the verdict” as a renewed "motion for a judgment as a matter of law.”