This appeal arose out of a property ownership dispute in St. Clair County.
Lillie May; Ledell May; Georgia Mae Gowens; Roseus Gowens; Ruth Bellamy; Riley Bellamy; and Nancy Williams, as the heirs at law of Hulda Brown, deceased, brought this action in the nature of a bill to *Page 1189 
quiet title against Woodrow and Carolyn Campbell. The heirs of Brown also instituted this action against the unknown heirs of Thomas Brown, James Brown, Mary Edwards, Dora Lackey, Sybatha Brown, and Hulda Brown. The court appointed a guardian ad litem to protect the unknown heirs' interests.
The Campbells counterclaimed, seeking a declaration that they owned the land. The trial court, after hearing conflicting oretenus evidence, quieted title in favor of the Campbells.
The sole issue on appeal is whether the trial court erred in its determination of ownership of the property in question. We affirm.
Sometime around 1917, Hulda and Tobe Brown took possession of the subject property on Morning Star Hill in Ragland, Alabama. On March 7, 1934, C.G. Davis and his wife, Liza Davis, conveyed that property by deed to Hulda Brown, the deed describing the land as follows:
 "Commencing at corner of M. Truss lot, run East 70 yards, thence North 110 yards to county road, thence 70 yards West along said road, thence 127 yards to beginning point, and being part of the Northwest Quarter, Section 17, Township 15, Range 5 East; and Ten acres adjoining the above described lands lying North of it; all of which is part of the Northwest Quarter of the Southwest Quarter, Section 17, Township 15, Range 5, East. Containing in all twelve acres more or less."
This deed was recorded in 1951.
The evidence presented by the heirs of Hulda Brown indicate that from around 1917 until sometime where in the 1950's the property was used for residential purposes, farming, and pasture land. When Hulda Brown became unable to farm the land, it grew up in timber. After Hulda Brown's death in 1961, her children occupied the homeplace, but did not farm the land. In 1975 a mobile home was placed on a two-acre tract of land across the county road from the homeplace on which Ruth and Riley Bellamy reside.
The ownership of the land upon which the homeplace and mobile home are situated is not contested by the Campbells. The property dispute in question relates only to the property described in the deed to Hulda Brown as "ten acres adjoining the above described land and lying North of it." The heirs of Hulda Brown contend that this property is the same as that claimed by the Campbells.
The Campbells, on the other hand, claim that they own fee simple title to the land conveyed to them by warranty deed from James S. Smith and wife, Jessie Dean Smith, on April 4, 1972; described as follows:
 "The West 12 acres of the N 1/2 of the NW 1/4 of the SE 1/4 of Section 17, Township 15 South, Range 5 East, less and except the lands heretofore conveyed."
The Campbells claim that upon obtaining the deed they immediately took possession of the land, and they claim to have adversely possessed the land for over 10 years.
The trial court, sitting without a jury, heard all of the testimony, reviewed the documentary evidence, had the parties each submit an abstract of title regarding the property, and, together with the attorneys, inspected the property in dispute. The trial court thereafter awarded the Campbells the property described in their deed and found "that the property contains 7 acres more or less as shown by the survey of L.F. McGinnis, dated September 20, 1975." The trial court also determined that the heirs of Hulda Brown, and the unknown defendant heirs, "are the owners of all other lands described in the complaint and the complaint as amended." The court thereafter set the boundary between the plaintiffs' and the Campbells' property and ordered monuments placed to fix the boundaries.
The heirs claimed that their title is superior to that of the Campbells and that the trial court erred in finding that the Campbells were the owners of the disputed property. We disagree and find that the Campbells *Page 1190 
presented sufficient proof of adverse possession of the property.
When a trial court has heard evidence presented ore tenus and resolves conflicting questions of fact in favor of one of the parties, the judgment will not be disturbed on appeal unless clearly erroneous or unsupported by credible evidence. The presumption of correctness is especially strong in adverse possession cases. Scarbrough v. Smith, 445 So.2d 553, 555-56
(Ala. 1984). The question of adverse possession is an issue properly determined by the trier of fact. Even in the absence of specific findings of fact by the trial court, we will assume that the judge made such findings as were necessary to support the judgment, unless such findings would be clearly erroneous or against the great weight of the evidence. Hand v. Stanard,392 So.2d 1157, 1159 (Ala. 1980).
In the case at bar, the trial judge could have reasonably concluded from the evidence that the deed to Hulda Brown was patently ambiguous and that it did not sufficiently describe the location of the 10-acre tract of land in issue.
Additionally there was evidence presented to support the determination that the Campbells owned the land by adverse possession, pursuant to the statutory requirements of Alabama Code 1975, § 6-5-200.
The evidence showed that since at least 1970, the property had been assessed to, and taxes had been paid by, the Campbells or their predecessor in title, James Smith. The evidence also showed that the Campbells and their predecessors in title had held color of title and their deeds had been recorded in excess of ten years.
In addition, it is also necessary for the claimant to hold the land adversely, Reed v. Ray, 409 So.2d 814 (Ala. 1982). There must be an actual, clear, and notorious occupancy, which is continued, adverse, and exclusive during the statutorily prescribed period, and, it must be with an intention to claim title to the land occupied. Hand v. Stanard, 392 So.2d 1157,1159-60 (Ala. 1980); Courtney v. Boykin, 356 So.2d 162 (Ala. 1978).
One need not actually physically reside upon the land; the "land need only be used by an adverse possessor in a manner consistent with its nature and character — by such acts as would ordinarily be performed by the true owners of such land in such condition." Hand, supra, 392 So.2d at 1160.
The land in question was rural undeveloped timberland. While we note that sporadic cutting of timber is insufficient, by itself, to establish possession, cutting timber, marking boundaries, and regularly walking over the land to inspect when taken together may all be factors sufficient to constitute adverse possession. Hurt v. Given, 445 So.2d 549, 552 (Ala. 1983).
In this case, the testimony indicates that, in addition to cutting timber, the Campbells had the property surveyed; it indicates that the boundary lines were marked, painted, and ribboned off on several occasions; that a road was cut around the property; that lots were sold for gravesites; and that the Campbells regularly walked onto the property to inspect it. Considered collectively, these facts provided sufficient evidence from which the court could have determined that the acts of the defendants constituted adverse possession of the rural timberland. Therefore, the trial court's judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur. *Page 1191