James W. King, who was an employee of Reynolds Metals Company, sustained injuries arising out of an accident that occurred while he was performing his job for Reynolds. King and his wife filed a suit (Case No. CV 85-09 in the Circuit Court of Colbert County, Alabama) against The Travelers Insurance Company, Inc., Reynolds's workmen's compensation carrier (alleging that Travelers had negligently and wantonly failed to properly perform inspection and safety engineering services it had undertaken to perform) and against eight of King's co-employees. The accident occurred on or about October 28, 1984. In Count One, King sought to recover for the following personal injuries:
 "He was bruised, contused, lacerated, and made lame and sore. His legs and feet were broken. His back was injured. He was caused to suffer much pain and suffering. He was caused to be disabled. He was caused to lose time from his employment and to lose wages. He was caused to be rendered less employable. He was caused to incur great medical expense in and about the treatment of his injuries. He was disfigured and mamed, and he will suffer the same injuries in the future."
In Count Two, Mrs. King sought to recover for her loss of King's services and consortium. After responsive pleading by the defendants, the attorney of record for the Kings hand delivered a settlement offer to an attorney of record for some of the defendants, who had authority to negotiate a settlement for all of the defendants. These attorneys had been attempting to settle this entire case for several months. This offer was accepted by the attorney for the defendants 11 days after the offer was made. After the offer was accepted, the Kings decided that they did not want to settle for the amount negotiated by their attorney of record. The defendants filed a motion for entry of judgment pursuant to a settlement agreement of the parties, attaching the September 4, 1986, offer by the plaintiffs[1] and the September 15, 1986, acceptance by the defendants.[2] *Page 1025 
The Kings filed a response to the motion for entry of judgment pursuant to the settlement agreement of the parties, which states in part as follows:
 "Comes now the plaintiffs and respond to the defendants' Motion for Entry of Judgment as follows:
 "Plaintiffs did make a written offer to the defendants to settle as demonstrated in defendants' Exhibit A, that being the letter from [their attorney] to Attorney [for defendants] dated September 4, 1986, however, the defendants rejected said offer and made a counter-offer that was very similar to the plaintiffs' offer except the up front money would be increased from $150,000.00 to $180,000.00 and the first five year annual payments of $12,000.00 would be eliminated. . . ." (Emphasis added.)
The only issue before the trial court in regard to the defendants' motion for entry of judgment pursuant to the settlement agreement of the parties was whether the offer of September 4, 1986, had been rejected.
The trial court set the defendants' motion for hearing and heard ore tenus evidence from the parties, including testimony from the Kings' attorney and the defendants' attorney. On December 4, 1986, the trial court found that the parties entered into a binding contract, ratified the settlement agreement of the parties, and ordered the parties to comply therewith. Mr. King filed a motion to reconsider. The trial court entered an order stating that the court would not hear further testimony and was treating the motion to reconsider as a motion for new trial.
Thereafter, Mrs. King filed a motion pursuant to Rule 60, Ala.R.Civ.P., for a correction of the court's judgment. Mrs. King took the position that the judgment applied only to Mr. King. The trial court dismissed the entire case with prejudice as to all *Page 1026 
defendants in accordance with the settlement agreement of the parties. The Kings filed a motion to set aside this order dismissing the case. The trial court entered an order denying the Kings' motions for new trial and for reconsideration and specifically stated that its order of December 4, 1986, included and encompassed the claims of Mr. and Mrs. King. The Kings appeal. We affirm.
The evidence in regard to whether there was a rejection of the Kings' offer or a counter-offer made by the defendants was presented ore tenus to the trial court. Our standard of review where the trial court has heard ore tenus testimony is that we will presume that the trial court's judgment is correct and that it will be reversed only if the judgment is found to be plainly and palpably wrong after a consideration of all of the evidence and after making all inferences that can logically be made from the evidence. Robinson v. Hamilton, 496 So.2d 8 (Ala. 1986). The evidence was in dispute in regard to whether there was a rejection or a counter-offer made in response to the Kings' offer. The attorney for the defendants who handled the "settlement" testified that there was no rejection or counter-offer, only an inquiry as to whether the plaintiffs would consider a structured settlement with a different payment arrangement. The trial court apparently believed that testimony; it found for the defendants and granted their motion for entry of judgment pursuant to the settlement agreement. This was not plainly and palpably wrong.
Mere inquiries or suggestions will not terminate an offer.1 Williston on Contracts, § 79 at 263 (1957). In JaybeConstruction Co. v. Beco, Inc., 3 Conn. Cir.Ct. 406, 216 A.2d 208 (1965), it was noted that a mere inquiry as to whether one proposing a contract will alter or modify its terms does not amount to a rejection. See, also, 1 Corbin, Contracts, § 93, at 388-89 (1963), which states:
 "Just as 'requests' and 'suggestions' do not turn an otherwise absolute acceptance into a conditional one, so too they do not constitute counter offers. One reason for this is that they are not themselves offers of any kind. The offeree writes: 'Is this your lowest price?' or 'If I doubled the amount, I suppose you would make the price lower', or 'You may send me 800 tons as offered by you, but I trust that you will make it 1200 tons at 68 shillings.' In these cases, there is no counter offer. In the first two there is a mere request for information as to possible lower prices, no power of acceptance being created in the original offeror. They do not affect power to accept the offer previously made. In the last case, there is a valid acceptance of the offer of 800 tons; and the contract thereby consummated is not affected by the fact that the acceptor makes an additional offer to buy 400 more tons at 68 s. if the seller will accept settlement at that rate for the first 800 tons also."
We have stated that agreements made in settlement of litigation are as binding on the parties as any other contracts. Brocato v. Brocato, 332 So.2d 722 (Ala. 1976). Section 34-3-21, Code of Alabama 1975, as amended, vests in an attorney authority to bind his or her client in all matters that relate to the cause, including the right to settle all questions involved in the case. Such agreements are not only authorized, but encouraged, to promote justice and fair dealing and to terminate properly or prevent litigation. Brocato v.Brocato, supra. Under the proposed settlement agreement, all of Mr. King's past and future medical expenses necessitated by his injuries will be paid and, in addition, the Kings are guaranteed $660,000 to be paid over a 30-year period, with $150,000 being paid at the time of settlement. We cannot say that this settlement was unjust or unfair for 38-year-old Mr. King and his wife.
In the September 4 settlement offer, the following appeared: "Please try to respond to this offer by tomorrow." This does not set a time limit for when an acceptance must be made. Defendants' attorney did respond by telephone the next day, and there is substantial evidence in the record that the offer was never withdrawn and remained open until the defendants' *Page 1027 
letter of acceptance was delivered to the Kings' attorney on September 15.
Seven days after the offer was made, the Kings' attorney treated the offer as still being open, for on September 11 he told defendants' attorney that if the case was to be disposed of the defendants needed to do something about the offer. The Kings' attorney testified that his written offer was never withdrawn prior to the defendants' accepting it.
The trial court found that the offer and acceptance included Mrs. King and constituted a settlement of the entire lawsuit. There is evidence in the record to support this finding. Defendants' attorney testified that the parties were negotiating a full and complete settlement of the lawsuit to resolve the entire case, including Mrs. King's claim. In the Kings' response to the motion for entry of judgment pursuant to the settlement agreement, which is hereinbefore set out, the Kings conceded that the offer included the claims of both plaintiffs and that the only issue to be tried was whether the offer had been rejected by the defendants. This finding by the trial court is not plainly and palpably wrong, but is supported by evidence in the record.
The Kings' last issue is: "Whether an agreement to settle a workmen's compensation case is valid, where the amount is not specifically shown to be within the schedule of the act, without the express approval of a circuit court?"
It is obvious that the Kings intended for the $660,000 settlement to include all non-medical workmen's compensation benefits. In their settlement offer the following appears:"Of course, there would be no further Workmen's Compensationdue."
Is this legal? Yes. All interested parties have a right to settle all matters of compensation between themselves. Section 25-15-150, Code of Alabama 1975. If the settlement is equal to or exceeds the benefits due under the Alabama Workmen's Compensation Act, then the settlement does not require court approval. Section 25-5-56, Code. No settlement for an amount less than the amounts or benefits stipulated is valid unless a judge of the appropriate circuit court approves the settlement. Section 25-5-56, Code. Phillips v. Opp Micolas Cotton Mills,Inc., 445 So.2d 927 (Ala.Civ.App. 1984).
Here, a circuit judge of the county in which King was injured approved the settlement. He had before him the Kings' settlement offer stating that "there would be no further Workmen's Compensation due" other than the payments to be made in accordance with the settlement. The trial court found that "the parties entered into a binding contract in which there was a definite offer, acceptance and consideration; and the partieshad the capacity and authority to agree as they did which wasset out in writing." (Emphasis added.)
Although the trial court's order does not specifically state that the workmen's compensation claim was within the schedule of benefits prescribed by the act, such a finding is implicit in the trial court's judgment. Hawk v. Biggio, 372 So.2d 303
(Ala. 1979).
It appears to us that King received an amount far in excess of any amount of benefits a workmen's compensation claimant is entitled to receive for the injury claimed, §§ 25-5-68(b) and §25-5-57, Code: Be that as it may, the trial court found that "the parties had the capacity and authority to agree as they did." After considering all of the evidence and after making all of the inferences that can logically be made from the evidence, we cannot hold that the judgment was plainly and palpably wrong.
We have a history of upholding litigants' settlement agreements in the absence of fraud or overreaching. SeeBrocato, supra; Hawk v. Biggio, supra; Sayre v. Dickerson,278 Ala. 477, 179 So.2d 57 (1965).
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.
[1] "J.W. will settle his case for $150,000 up front; $12,000 a year payable one year after the date of receiving the $150,000 and then $12,000 each year thereafter until he has received $12,000 for five years; then $14,000 a year for five years; then $16,000 a year for five years; then $18,000 a year for five years; then $20,000 a year for five years; then $22,000 a year for five years. "I have stressed to him that we must make every effort to settle this case at this time and this is his lowest and last offer.
"Again, as I have told you earlier, any settlement of this nature will have to be conditioned upon you and I satisfying me that the Internal Revenue Service will allow me to accept my fees as he is accepting his money and I believe they will if there is any unknown factor involved in it and the only unknown factor I can think of would be that we could add to the settlement mentioned above another provision, that at the end of the above mentioned thirty year period, which would be guaranteed, there would then be paid to him the sum of $500 per year for the rest of his life. That would make it incapable of absolute certainty and I believe would probably mean that the IRS would allow my fees to be treated that way. Please try to respond to this offer tomorrow.
[2] "Your offer on behalf of Mr. and Mrs. J.W. King is accepted. We will pay the One Hundred Fifty Thousand Dollars ($150,000) cash up front as soon as we can get it here and get all the documents prepared. This is with the further understanding that Twelve Thousand Dollars ($12,000) per year will be paid beginning October 1, 1987 and for each year thereafter until five years total have expired; then Fourteen Thousand Dollars ($14,000) per year for the next five years; then Sixteen Thousand Dollars ($16,000) per year for the next five years; then Eighteen Thousand Dollars ($18,000) per year for the next five years; then Twenty Thousand Dollars ($20,000) per year for the next five years; then Twenty Two Thousand Dollars ($22,000) per year for the next five years. At the end of that time, which amounts to thirty years, Five Hundred Dollars ($500) per year will be paid to Mr. and Mrs. King for the rest of Mr. King's lifetime. All of this is with the further understanding that the case will be dismissed with prejudice, and the workmen's compensation benefits and case will be closed out immediately with the further provision that the medical benefits will remain open to the extent they are required to be paid by workmen's compensation act of Alabama. The workmen's compensation subrogation provision is waived so that Mr. King will not have to reimburse the carrier, The Travelers.
"As I told you, I cannot speak for Reynolds Metals Company on the effect of the settlement as to any retirement or disability benefits Mr. King may have, but to the best of my knowledge, this settlement has no effect on whatever other rights he has to either retirement or disability benefits. As far as social security disability benefits are concerned, I cannot speak about that with any certainty, but as we discussed, possibly they will be affected. I simply do not know and make no representations about these matters. I will certainly not write anything into the release agreement to foreclose Mr. King from making proper application for any other benefits to which he may be entitled.
"My client has to purchase the structured settlement, and it is done by sending it out for quotes. This was done on Friday afternoon, September 12 after you and I discussed it in Russellville. Quotes only last for ten days, so I need the following information from you immediately:
"1. The names and the street addresses of each payee (i.e. of yourself and Mr. and Mrs. James W. and Sadie H. King).
"2. The social security number of each payee.
"3. A first, second and third beneficiary for each payee; their relationship to each payee respectively, and their current street addresses, ages and social security numbers.
"4. The address where the deferred payments are to be sent. If the check is to be sent to a bank, give me the name and address of the bank and the payee's bank account identification number for direct deposits. I intend to have it set up where two-thirds of the payment goes to Mr. and Mrs. King and one-third to you. If I am wrong, and it should all go to only one party, but made out jointly to all three of you, let me know that.
"5. Birth certificate for Mr. King. I do not believe the company needs it for anyone else since Mr. King's lifetime will control the final $500 per year payments, and the rest of the payments are guaranteed.
"My contact with The Travelers will be out of town the week of September 22, so please get this information to me within one or two days of receipt of this letter so that it will reach him." *Page 1028