The City of Birmingham ("City") commenced this action in the Circuit Court of Jefferson County, seeking to preliminarily enjoin Sansing Sales of Birmingham, Inc. ("Sansing"), from conducting business within the City until Sansing had paid all delinquent and unpaid license fees and penalties. The City's request for a preliminary injunction was denied, conditioned on Sansing's posting a $5,000 bond. After hearing ore tenus
testimony, the trial court held that Sansing was a " 'merchandise broker' as that term is defined in Section 164(b) of the License Tax Law of the City of Birmingham when it negotiate[d] a sale of goods between a supplier and a customer and [had] the goods shipped directly to the customer by the supplier." The City's motion for a new trial was denied, and the City appeals.
Under the "ore tenus rule," the trial court's judgment is presumed correct and will be reversed by this Court only if the judgment is found to be plainly and palpably wrong after a consideration of all of the evidence and all reasonable inferences that can logically be drawn from the evidence. SeeKing v. Travelers Ins. Co., 513 So.2d 1023 (Ala. 1987);Robinson v. Hamilton, 496 So.2d 8 (Ala. 1986). The trial court's judgment will be affirmed if, under any reasonable aspect of the evidence, there is credible evidence to support the judgment. McCrary v. Butler, 540 So.2d 736 (Ala. 1989);Jones v. Jones, 470 So.2d 1207 (Ala. 1985).
The issue before us is whether the trial court was plainly and palpably wrong in finding that Sansing was a "merchandise broker" within the meaning of Section 164(b). We hold that the trial court was not plainly and palpably wrong.
The trial court made the following findings and entered the following judgment:
 "This cause came on to be heard upon testimony taken and other evidence presented at an oral hearing without jury. The issue in this case is whether the Defendant is a business which must pay taxes under Section 164 of the License Tax Law or whether it must pay taxes under Section 165 of the License Tax Law.
"Sections 164 and 165 read as follows:
"164 — MERCHANDISE BROKER OR AGENT
 "(a) Each merchandise broker, or agent for the sale thereof compensated wholly on a fee or commission basis, shall pay a license computed as follows: Where gross commissions or fees for previous year were $10,000, or less the minimum license fee shall be . . . . . . . . . . $50.00 Plus an amount equal to 3/20 of 1% on gross commissions or fees in excess of $10,000.
 "(b) A merchandise broker is one who for a commission buys or sells goods, or who negotiates such transactions between buyer and seller, without having custody of, or title, to the property.
 "165 — MERCHANDISE RETAIL, WHOLESALE OR OTHERWISE — GENERAL —
 "(Not to include any business for which license is specifically required by other Schedule of this Code). Each person engaged in the business of offering for sale, taking or soliciting orders for sale, or selling merchandise of any description, including any such products stored in a warehouse *Page 466 for sale, distribution or delivery, whether as owner, dealer, agent or cosignee, shall pay a license as follows:
 Where gross receipts, less returned goods, for the year next preceding, were
 (a) $30,000 or less . . . . . . . . . . . . . . $30.00
 (b) Where gross receipts as above defined exceed $30,000, the annual License Fee shall be 1/10 of 1% of all gross receipts.
 "The issue is determined by whether or not the Defendant is a 'merchandise broker' as that term is defined in Section 164(b).
 "Based on the evidence submitted to it, the Court makes the following findings of fact:
 "1. The Defendant represents or handles the sale of the products of various manufacturers in a large portion of the State of Alabama.
 "2. The Defendant reviews construction drawings and prepares a list of items that will be required in a construction project which are manufactured by the companies which it represents. The Defendant then obtains prices from the manufacturer. In most instances the Defendant will add its commission to the price obtained from the manufacturer and will then submit quotes to contractors for their use in bidding on the construction project. If a successful bidder desires to use the prices supplied by the Defendant, that contractor will issue a purchase order to the Defendant. The purchase order may be for products from several different manufacturers represented by the Defendant. The Defendant will then order the products from the different manufacturers and, in most instances, will have the products shipped directly to the contractor or to the job site. In some instances the products will be shipped 'FOB the Shipping Point' and in others they will be shipped 'FOB the Job Site' or 'FOB Destination.'
 "3. The manufacturer will then invoice the Defendant for the products and the forms used often show that the products were 'sold to' the Defendant. The Defendant then invoices the contractor and the contractor pays the Defendant. The Defendant also collects the appropriate sales taxes from the contractors. After collecting from the contractors, the Defendant pays the manufacturer. In the event the contractor does not pay the Defendant, the Defendant will attempt to negotiate with the manufacturer, but ultimately the Defendant is liable to the manufacturer for the cost of the products ordered by the Defendant. Under the various shipping instructions the Defendant never takes possession of the goods and is not liable for the loss of the goods in transit.
 "It appears to the Court that the Defendant falls within the language of Section 164(b) which defines a merchandise broker as one 'who negotiates . . . transactions between buyer and seller, without having custody of, or title, to the property'.
 "It is, therefore, ORDERED, ADJUDGED and DECREED by the Court as follows:
 "ONE: The Defendant, Sansing Sales of Birmingham, Inc., is a 'merchandise broker' as that term is defined in Section 164(b) of the License Tax Law of the City of Birmingham when it negotiates a sale of goods between a supplier and a customer and has the goods shipped directly to the customer by the supplier. If the Defendant takes possession of the goods by placing them in its warehouse and sells them to the customer directly, then, for those sales it would be required to pay the taxes under Section 165 of the License Tax Code." (Emphasis added.)
The City contends that Sansing's sales transactions were indicative of a "retailer" within the meaning of that term as used in Section 165, not indicative of a "merchandise broker" within the meaning of Section 164(b).
The most important determining factor of what constitutes a "broker" is whether the party is dealing for itself or for another. A broker may by contract have title to the property pass through it (though usually it does not), and it may by contract collect from the consumer, but it does not deal on its own account. City of *Page 467 Birmingham v. Hoffmann Robinson, 262 Ala. 104, 77 So.2d 354
(1955); King Boozer v. State, 241 Ala. 557, 3 So.2d 572
(1941), rev'd on other grounds, 314 U.S. 1, 62 S.Ct. 43,86 L.Ed. 3 (1941). The fact that the invoices indicated that Sansing purchased the equipment from the manufacturer and then sold that equipment to the contractor is not necessarily inconsistent with the testimony that it purchased the equipment as a broker. Rather, the testimony was such that the trial court was justified in finding that: 1) Sansing never gave the contractor any guarantees or warranties for the equipment (the manufacturer provided those guarantees and warranties); 2) Sansing transacted its business as a broker, representing the manufacturers, whom it charged a commission for its service pursuant to an agreement between them (see City of Birminghamv. Hoffmann Robinson, supra) and acting as a negotiator in the sale of equipment without having actual custody of that equipment (see Stratford v. City Council, 110 Ala. 619,20 So. 127 (1895)); 3) Sansing was not acting for itself in doing so, even though it was in name the purchaser and even though it was indebted for the agreed price; 4) Sansing had no power of disposition of the property other than delivery to the contractor; 5) it never used the equipment as its own; 6) it had no control over the price of the equipment or its commission (the manufacturer set both the equipment price and Sansing's commission); and 7) Sansing merely took an essential step for the contractor in the transaction by which the contractor acquired title to the equipment for the construction project. (See King Boozer v. State, supra, as to items 3, 4, 5, 6, and 7.)
For the foregoing reasons, we find that the trial court's judgment was not plainly and palpably wrong, and we affirm.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.