**Twana Jordan WILLIAMS and Tina Jo Weldon**

v.

**Wendell WHITE.**

2140958.

Court of Civil Appeals of Alabama.

April 22, 2016.

Mark P. Williams of Norman, Wood, Kendrick, & Turner, Birmingham, for appellants.

Submitted on appellants' brief only.

THOMPSON, Presiding Judge.

Twana Jordan Williams and Tina Jo Weldon ("the sisters") appeal from a judgment of the Clarke Circuit Court ("the trial court") in this civil action involving a property dispute. In their complaint, the sisters sought to enforce the boundary lines between their property and the property of Wendell White as set forth in the deed conveying White's property to him.

Specifically, they claimed that the boundaries of White's property conformed to those depicted on a boundary survey and set forth in the legal description of the property contained in the deed conveying the property to White. The sisters asserted that a chain-link fence surrounding a portion of White's property also enclosed a portion of their property; the sisters' property enclosed within the chain-link fence is hereinafter referred to as "the disputed property." White had built or made improvements to structures contained within the fence, which the sisters claimed encroached on the disputed property. The sisters requested damages and injunctive relief against White in connection with White's alleged trespass on the disputed property. They also sought the removal of the "encroaching structures." There was no dispute that certain of the structures that lay within the chain-link fence were outside White's property. In addition, the sisters sought an injunction to enjoin White from using their property to enter and exit a separate parcel of property that White owns. The ownership and boundaries of that separate parcel are not disputed.

On April 9, 2015, the trial court entered an order in which it determined that White owned in fee simple the disputed property; in other words, the trial court determined that White owned all the property enclosed in the chain-link fence. The trial court denied the sisters' request for damages in connection with the alleged trespass, but the order made no mention of the injunctive relief they sought. Because the trial court's order did not determine the rights of the parties regarding the sisters' requests for injunctive relief against White, this court determined that there was no final judgment capable of supporting an appeal. Therefore, on January 5, 2016, this court entered an order reinvesting the trial court with jurisdiction to enter a judgment addressing the sisters' claims for injunctive relief. On February 2, 2016, the trial court complied with this court's order and entered an amended judgment denying the sisters' claims for injunctive relief. Because all the claims as to all the parties have now been disposed of, we are able at this time to address the appeal on its merits.

The record indicates the following. The sisters are the daughters of Betty Lou Jordan and Joe Cecil Jordan. The Jordans owned approximately 17.6 acres of land in Coffeeville, Clarke County. The family's residence was on the land. In 1980, Joe Cecil and Betty Lou divorced. As part of the property settlement, Joe Cecil conveyed a life estate in the property, excepting a one-acre tract, to Betty Lou. Upon Betty Lou's death, the property subject to Betty Lou's life estate was to go to the sisters. The one-acre parcel was awarded to Betty Lou in fee simple. A recorded deed providing a legal description of the one-acre parcel as well as a survey map of that parcel were recorded in the Clarke County probate office on June 3, 1980.

On February 14, 1985, Betty Lou conveyed the one-acre parcel to Destry Dunagan and his wife, Carolyn. On July 28, 1986, the Dunagans conveyed the property to White, Carolyn's brother. Dennifer White, who was White's wife at the time, was included on the deed. However, when she and White divorced in 1996, Dennifer executed a quitclaim deed to White for her interest in the one-acre parcel. None of the deeds conveying the one-acre parcel of property mentioned a chain-link fence or a fence line; they did, however, include a legal description of a square acre of property. White testified that Betty Lou put up the chain-link fence enclosing the disputed property and a portion of the one-

acre parcel before she sold the one-acre parcel to the Dunagans.

On June 23, 1986, approximately a month before he purchased the one-acre parcel from the Dunagans, White entered into a "ten-year lease" with Betty Lou for property adjacent to the one-acre parcel; the leased property included the disputed property. The lease ran from June 23, 1986, through December 31, 1996, and gave White the option to extend the lease for an additional ten years. Lease payments were due once a year, by the last day of January. Betty Lou died in March 2011. Williams testified that Betty Lou had told her that White had paid rent for the leased property until "probably" the year before Betty Lou died. Williams also stated that White had paid rent through "'09 or '10, something like that." White agreed that, although he had not signed a second lease or a document formally extending the original lease term, he continued to pay Betty Lou to lease the property. He testified that he did not believe he paid rent after 2003.

The lease gave White, as the lessee, "all rights to use said land as if it is [his] to use and enjoy said land as it is [his] so long as [he] do[es] not damage the property." A second provision of the lease stated:

> "At the termination of this lease, the lessee shall surrender the premises with all buildings erected thereon and additions thereto, and all landlord's fixtures affixed thereto within the last ten years of the said term in such repair and condition as shall be in accordance with the covenants herein contained."

Nothing in the lease, a copy of which is included in the record on appeal, precluded White from building on the leased property. White testified that he was aware that, when the lease ended, any structure he had put on the leased property would revert to the property owner. He also conceded that, even after he stopped paying rent in 2003, he continued to use the property adjacent to his one-acre parcel—i.e., the leased property—pursuant to the terms of the lease. When asked whether he was requesting that the trial court find that he owned everything inside the chain-link fence, White replied: "I would love to, I mean—" It is unclear from the record whether White's attorney interrupted him with a new question or whether White simply trailed off, but his attorney then asked him if he had been using that property for "twenty-something years."

Even after he stopped paying Betty Lou, White said, he used the leased property as an area to park his log trailers, and, he said, Betty Lou never complained. He also testified that, with Betty Lou's consent, he planted an "oat patch" on the leased property. White also testified that, in approximately 1994, Betty Lou had timber cut from the leased property.

As mentioned, the trial court entered an order on April 9, 2015. In that order the trial court found that White and his predecessors "have been in open, notorious, exclusive, and hostile possession" of the disputed property lying within the chain-link fence for more than 20 years, and it awarded White fee-simple title to all the property within the fence. The sisters were awarded an easement along the roadway that ran from Highway 69 through White's property to their adjacent property. In the final judgment entered on February 2, 2016, the trial court denied the sisters' requests for injunctive relief. The sisters appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12–2–7(6), Ala.Code 1975.

 On appeal, the sisters contend that the trial court erred in finding that White owned the disputed property—i.e.,

the property beyond the one-acre parcel he had purchased but within the chain-link fence—through adverse possession; in other words, the sisters contend that the trial court erred in determining that White had been in open, notorious, exclusive, and hostile possession of the disputed property for more than 20 years. White did not favor this court with a brief on appeal.

"Where a trial court hears *ore tenus* testimony, as in this case, its findings based upon that testimony are presumed correct, and its judgment based on those findings will be reversed only if, after a consideration of all the evidence and after making all inferences that can logically be drawn from the evidence, the judgment is found to be plainly and palpably erroneous. See *City of Birmingham v. Sansing Sales of Birmingham, Inc.*, 547 So.2d 464 (Ala. 1989); *King v. Travelers Ins. Co.*, 513 So.2d 1023 (Ala.198[7]); *Robinson v. Hamilton*, 496 So.2d 8 (Ala.1986); see, also, *Meeks v. Hill*, 557 So.2d 1238 (Ala. 1990). The trial court's judgment will be affirmed if there is credible evidence to support the judgment. *City of Birmingham v. Sansing Sales of Birmingham, Inc., supra*; see, also, *American Casualty Co. v. Wright*, 554 So.2d 1015 (Ala.1989).... The presumption of correctness is particularly strong in boundary line disputes and adverse possession cases, because the evidence in such cases is difficult for an appellate court to review. *Seidler v. Phillips*, 496 So.2d

714 (Ala.1986); *Wallace v. Putman*, 495 So.2d 1072 (Ala.1986); *Drennen Land & Timber Co. v. Angell*, 475 So.2d 1166 (Ala.1985); *May v. Campbell*, 470 So.2d 1188 (Ala.1985)."

*Bearden v. Ellison*, 560 So.2d 1042, 1043–44 (Ala.1990). Questions of law are reviewed de novo. *Alabama Republican Party v. McGinley*, 893 So.2d 337, 342 (Ala.2004).

■ Based on the language used in the judgment, the trial court appears to have treated this case as one involving adverse possession by prescription and not as one involving a boundary-line dispute between coterminous landowners.[1]

"In *Kerlin v. Tensaw Land & Timber Co.*, 390 So.2d 616 (Ala.1980), the supreme court recited Alabama law regarding adverse possession:

" 'In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. *See, Fitts v. Alexander*, 277 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or de-

---

1. We recognize that property that is the subject of a boundary dispute can be subject to a hybrid form of adverse possession that consists of elements of adverse possession by prescription and of elements of statutory adverse possession and that, pursuant to this hybrid form of adverse possession, coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years or by adverse possession for ten years. *Buckner v. Hosch*,

987 So.2d 1149, 1152 (Ala.Civ.App.2007). However, the sisters do not challenge the trial court's treatment of this matter as one involving adverse possession by prescription, requiring hostile possession for 20 years, and, as mentioned, White did not submit a brief to this court or file a cross-appeal. Accordingly, we will treat this action as one involving adverse possession by prescription, as did the trial court.

vise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. [Ala.] Code 1975, § 6–5–200. *See, Long v. Ladd,* 273 Ala. 410, 142 So.2d 660 (1962).' "

*Buckner v. Hosch,* 987 So.2d 1149, 1151–52 (Ala.Civ.App.2007).

Furthermore, although the sisters initiated this action to enforce White's deed and to prevent him from encroaching on land they claim is theirs, the only way White can extend his property beyond the legal description contained in the deed conveying him the one-acre parcel is to claim that he holds that additional land through adverse possession. We note that, in his answer to the sisters' complaint, White made only a general denial and did not plead adverse possession of the disputed the property. The issue of adverse possession was tried by the implied consent of the parties at trial, however. *See* Rule 15(b), Ala. R. Civ. P.

 "When a party claims title to land by way of adverse possession, the presumption is in favor of the record owner, and a heavy burden of proof rests on the one claiming by adverse possession." *Kerlin v. Tensaw Land & Timber Co.,* 390 So.2d 616, 619 (Ala.1980).

"A party claiming title to property through adverse possession by prescription must satisfy each of the following elements: 1) The party must actually possess the property, 2) the party's possession must be exclusive, 3) the party's possession must be open and notorious, 4) the party's possession must be hostile and under a claim of right, and 5) the party's possession must be continuous for a period of 20 years. See *Daugherty v. Miller,* 549 So.2d 65 (Ala.1989); *Hayden v. Robinson,* 472 So.2d 606 (Ala.

1985); *Fitts v. Alexander,* 277 Ala. 372, 170 So.2d 808 (1965)."

*Sparks v. Byrd,* 562 So.2d 211, 214–15 (Ala.1990).

"The requirement that possession be 'hostile and under a claim of right' before a party can acquire title through adverse possession is imposed so that the property owner will not be lulled into a false sense of security and thereby be induced to refrain from asserting his right to the property by entry or legal action. This Court has held that a permissive occupant of property cannot acquire title to property through adverse possession. See *Stewart v. Childress,* 269 Ala. 87, 111 So.2d 8 (1959)."

*Sparks,* 562 So.2d at 216 (footnote omitted).

" ' "[A] permissive occupant cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise nonhostile possession into one that is hostile." '

"*Smith v. Persons,* 285 Ala. 48, 55, 228 So.2d 806, 811 (1968) (quoting *Stewart v. Childress,* 269 Ala. 87, 93, 111 So.2d 8, 13 (1959), citing in turn *White v. Williams,* 260 Ala. 182, 187, 69 So.2d 847, 851 (1954))."

*Hanks v. Spann,* 33 So.3d 1234, 1238 (Ala. Civ.App.2009).

 In this case, Betty Lou erected the chain-link fence when she both owned the one-acre parcel and held a life estate in the surrounding property. Thus, she had no

reason to erect a fence that adhered strictly to the demarcation of the one-acre parcel that was conveyed to the Dunagans in 1985. The evidence is undisputed that White purchased the one-acre parcel in July 1986 and that, shortly before that, he had leased the property adjacent to the one-acre parcel for a term of a little more than ten years; the original lease term expired on December 31, 1996. White had the option of renewing the lease when it expired, and, again, the evidence is undisputed that he continued to pay Betty Lou for use of the leased property until, *at a minimum*, an unspecified time in 2003. Under Alabama law, when a lease has a provision allowing for its renewal or extension, a lessee who enters into possession of the leased property for a fixed term and continues in possession of that property after the fixed term expires, paying rent as it becomes due, elects to exercise the option for renewal. *See Lott v. Douglas Oil Purchasing, Inc.*, 501 So.2d 1195 (Ala. 1986). Thus, by paying rent to Betty Lou for at least seven years after the initial term of the lease had expired, White renewed the lease for an additional ten years, i.e., until 2006.[2]

To resolve this issue, we need not reach a determination as to when or whether the lease expired. It is clear that White, as the lessee, continued as a permissive occupant of the leased property until *at least* sometime in 2003. Because White had permission to use the leased property until at least 2003, the location of the fence is irrelevant. The sisters filed their complaint on May 30, 2013. As noted, a permissive occupant of property cannot acquire title to that property through adverse possession. *Sparks,* supra. Because

White paid rent for the leased property until at least 2003, his possession of the leased property could not, as a matter of law, have been hostile until 2003, at the earliest. Furthermore, White testified that, after he stopped paying rent, he asked permission of Betty Lou to plant the oat patch, indicating that his use of the leased property continued to be permissive. Thus, the trial court's finding that White had been in hostile possession of the leased property for more than 20 years is plainly and palpably wrong, and the trial court's determination that White owned the disputed property through adverse possession is incorrect. Accordingly, that portion of the trial court's judgment awarding White ownership of the disputed property in fee simple is reversed.

 The sisters also argue that the trial court erred in failing to enjoin White from trespassing on their property to access another parcel of property that he owned. The evidence relevant to this issue is scant. Williams testified as follows:

"Q. [By Williams's attorney]: Okay. Now, you also had problems with [White] using your land to access other property of his?

"A. [By Williams]: Yes.

"Q.: Okay. And that property is not in dispute in the lawsuit and boundary line, because there is no dispute. But, is it fair to say it's down here in this area.

"A.: Yes, sir.

"Q.: And does Mr. White's property down here join Highway 69?

"A.: Yes. It's plenty of footage there for a road.

---

**2.** The sisters initiated this civil action on May 30, 2013. Because the lease is considered to have been renewed for an additional ten-year term, even if we were to apply the "hybrid" standard of resolving a boundary-line dispute,

which allows for adverse possession after 10 years rather than after 20 years, *see* note 1, supra, White would not have met the requirements for having the boundary line changed to match the fence line.

"Q.: But, no, his property itself, joins Highway 69?

"A.: Yes, it does.

"Q.: And he's been using the access from here to access that property?

"A.: That's where he built a little cabin."

The questioning then turned to the amount of damages the sisters were seeking.

White's testimony does not shed much more light on the facts regarding this issue. In discussing his second parcel of property and how he gains access to that property, White testified as follows:

"Q. [By White's attorney]: And does [the second parcel of property] join the [one-acre parcel of] property you purchased from Destry and his wife?

"A. [By White]: No, sir, it don't— that property corners right along here somewhere. And this property—I'm sorry, back up. About along here because wherever the gate is on here, it's eight outside that chainlink fence right there to the corner stob. And it comes down right here and hits it, comes to the center of this dirt road about along here, and comes to the corner. And the center of the road is the highway.

"Q.: Okay. So, it's your contention that they're not correct, that the entire road leading from Highway 69 to your property is on their property, but rather half of that road?

"A.: Right. It's not entirely on their's.

"Q.: And do you access that camp from the same dirt road that leads from the highway to your house?

"A.: Yes, sir.

"Q.: And where you access it, are you accessing it off the road on the property you own?

"A.: Yes, sir, half of it.

"Q.: Half of it, okay...."

White's attorney then turned to another topic.

A review of the documents included in the record on appeal does not help us review the propriety of the trial court's decision not to enjoin White from accessing his property by the means he currently uses. From the questioning and testimony, we are unable to discern what was meant by Williams's attorney when he referred to "down here in this area," or where White was referring to when he spoke about "the center of this dirt road." It appears that there is a dispute regarding the ownership of a dirt road White uses to access his property. In a single paragraph in their appellate brief, the sisters contend that, because White's property is adjacent to Highway 69, he is not entitled to trespass on the sisters' property to reach his property. There is no discussion as to what constitutes trespass or of any evidence they submitted to indicate that White was in fact trespassing. As Alabama's appellate courts have often said: " '[I]t is not the function of this Court to do a party's legal research or to make and address legal arguments for a party....' " *Butler v. Town of Argo,* 871 So.2d 1, 20 (Ala.2003) (quoting *Dykes v. Lane Trucking, Inc.,* 652 So.2d 248, 251 (Ala.1994)); *see also Berks v. Cade,* 158 So.3d 438, 453 (Ala.2014)(same); *O'Barr v. O'Barr,* 163 So.3d 1076, 1082 (Ala.Civ.App. 2014)(same); and *Alabama Dep't of Labor v. Dental Referral Serv., LLC,* 181 So.3d 1061, 1065 (Ala.Civ.App.2014)(same).

██ "[G]enerally a plaintiff bears the burden of proving the essential elements of his [or her] claims." *Ex parte Blue Cross & Blue Shield of Alabama,* 773 So.2d 475, 478 (Ala.2000). Based on the record before us, there is insufficient evidence to review regarding whether White trespassed on property belonging to the

sisters. Therefore, we cannot say that the trial court erred in denying the sisters' request that it enjoin White from using the "dirt road" to access his second parcel of property. Accordingly, we affirm the judgment of the trial court as to this issue.

For the reasons set forth above, we reverse that portion of the judgment awarding White title in fee simple to all the property inside the chain-link fence. Because we conclude that the trial court erred in awarding the disputed property to White, we also reverse the trial court's judgment denying the sisters' request for damages and injunctive relief relating to White's use of the disputed property. Accordingly, the cause is remanded to the trial court for entry of a judgment consistent with this opinion. Furthermore the trial court is to consider whether to award damages and injunctive relief, as the sisters requested, and to enter a judgment consistent with this opinion. To the extent the judgment denied the sisters' request to enjoin White from using their property to access his second parcel of property, the judgment is affirmed.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.