Rel: June 6, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0678
_____

### EBSCO Industries, Inc.

### v.

### Michael R. Ballard, Ballard Contractors, Inc., and MRB Farms, LLC

### Appeal from Tuscaloosa Circuit Court
### (CV-22-900707)

SELLERS, Justice.

EBSCO Industries, Inc., appeals from a judgment of the Tuscaloosa

Circuit Court ("the trial court") holding that Michael R. Ballard

("Ballard") and two entities owned and operated by Ballard -- Ballard Contractors, Inc., and MRB Farms, LLC -- acquired land situated in Tuscaloosa County by adverse possession. We reverse and remand.

## I. Facts

This land dispute involves an approximately 5.5-acre parcel of property that EBSCO owned and leased to Ballard ("the disputed parcel"). See the appendix to this opinion (showing the disputed parcel that lies between the "fence claimed by Ballard as property line" and the "boundary as shown on previous Herndon Hicks survey using fences of long standing.") The parties own adjoining properties. EBSCO purchased its property ("the EBSCO property") in 1988. At that time, a survey was not conducted, but the deed to the EBSCO property contained a legal description of that property. On March 1, 1990, EBSCO began leasing 240 acres of its property to Ballard for hunting purposes. A map attached to the lease included a shaded area suggesting that the lease included the disputed parcel. In relevant part, the lease prohibited Ballard from cutting timber on the leased property and reserved "[c]oon hunting" rights "exclusively to Mr. Bob Owens only." The original lease term

2

expired on February 28, 1991. However, the parties renewed the lease each year thereafter until February 2022.

In 1992, Ballard purchased the property located to the west of the EBSCO property ("the Ballard property"). Although Ballard did not have the Ballard property surveyed, he believed that a partial fence running north and south on the EBSCO property ("the subject fence") was the boundary line between the Ballard property and the EBSCO property. The subject fence does not join with any other fence to the north; rather, it stops running at a random point. Both properties are bordered on the south by a public road known as River Bend Farm Road. In 2016, Herndon, Hicks & Associates, Inc. ("Herndon"), conducted a survey of the EBSCO property that identified the western boundary line of the EBSCO property, separating it from the Ballard property. After Herndon flagged or marked that western boundary line, Rodney Dyer, an employee of EBSCO, painted the line with yellow paint. In late 2021, Ballard began the construction of a hog farm on the disputed parcel. At that time, he noticed yellow flags and paint on some of the pine trees. Although Ballard knew that EBSCO used yellow paint to mark its boundaries, he never said anything to EBSCO about the boundary markings. Around

that same time, Dyer went onto the EBSCO property to repaint the western boundary line, at which time he noticed the hog farm. In March 2022, EBSCO sent Ballard a letter advising Ballard to "cease and desist" from being on the EBSCO property other than to remove the hog farm from the property. Ballard refused to remove the hog farm, claiming that he had acquired ownership of the disputed parcel through adverse possession by cutting timber from the disputed parcel, among other things. EBSCO sent Ballard a second letter advising him that the prior lease had expired on February 28, 2022, and that a renewal lease would not be offered unless and until the controversy regarding ownership of the disputed parcel was resolved. As a result of the dispute, Herndon conducted another survey of the EBSCO property ("the 2022 survey"), which confirmed the same western boundary line. As indicated, the disputed parcel lies between the subject fence and the western boundary line.

In August 2022, EBSCO commenced an action against Ballard, asserting, among other things, claims of trespass, ejectment, and wrongful cutting of timber. Ballard answered, and MRB Farms filed a counterclaim, asserting that it had acquired ownership of the disputed

4

parcel through adverse possession; MRB Farms asserted that it had acquired title to the Ballard property from Ballard Contractors. EBSCO then amended its complaint to name Ballard, Ballard Contractors, and MRB Farms ("the Ballard parties") as defendants. Following a bench trial, the trial court entered a final judgment concluding that EBSCO held legal title to the disputed parcel at the time Ballard purchased the Ballard property. The trial court specifically found that EBSCO held legal title to the disputed parcel based on the undisputed testimony offered by EBSCO indicating that it had paid taxes on the parcel, the fact that the 2022 Herndon survey identified the western boundary line of the EBSCO property as being located west of the subject fence, and the testimony of another surveyor opining that the western boundary line established by the 2022 Herndon survey was correct. However, the trial court further determined that the Ballard parties had acquired ownership of the disputed parcel through adverse possession as early as 2012. Specifically, the trial court found (1) that, in 1992, Ballard had contracted with Alabama Power Company, allowing the company to increase the size of a power line within the disputed parcel; (2) that, in 2008, Ballard had harvested some trees he had planted within the

5

disputed parcel; and (3) that Ballard had replaced an existing gate on the disputed parcel without giving EBSCO a key. EBSCO filed a postjudgment motion to alter, amend, or vacate the judgment, which was denied. This appeal followed.

## II. Standard of Review

"The ore tenus rule affords a presumption of correctness to a trial court's findings of fact based on ore tenus evidence, and the judgment based on those findings will not be disturbed unless those findings are clearly erroneous and against the great weight of the evidence." Allsopp v. Bolding, 86 So. 3d 952, 958 (Ala. 2011). "The presumption of correctness is particularly strong in adverse possession cases, because it is difficult for an appellate court to review the evidence in such cases." Rice v. McGinnis, 653 So. 2d 950, 950 (Ala. 1995). However, the ore tenus standard of review has no application when the trial court is shown to have improperly applied the law to the facts. Espinoza v. Rudolph, 46 So. 3d 403, 412 (Ala. 2010). Rather, this Court reviews a trial court's conclusions of law and its application of law to the facts under a de novo standard of review. Id.

## III. Discussion

6

On appeal, EBSCO contends that the trial court erred in finding that the Ballard parties owned the disputed parcel through adverse possession. Because this case concerns adverse possession by prescription, the Ballard parties were required to prove that their possession of the disputed parcel was "actual, exclusive, open, notorious and hostile … under a claim of right for a period of twenty years." Kerlin v. Tensaw Land & Timber Co., 390 So. 2d 616, 618 (Ala. 1980).[1] "When a party claims title to land by way of adverse possession, the presumption is in favor of the record owner, and a heavy burden of proof rests on the one claiming by adverse possession." Id. at 619. In its judgment, the trial court concluded that EBSCO held legal title to the disputed parcel.[2]

---

[1]Because the disputed parcel in this case is approximately 5.5 acres, the case is an adverse-possession case rather than a boundary-line dispute. See Buckner v. Hosch, 987 So. 2d 1149, 1152 (Ala. Civ. App. 2007) (holding that when a coterminous landowner claims to have acquired all or a significant portion of another coterminous landowner's land by virtue of adverse possession, the case is an adverse-possession case rather than a boundary-line dispute); and McCallister v. Jones, 432 So. 2d 489, 492 (Ala. 1983) (holding that, when one coterminous landowner claimed to have acquired ownership of a three- to five-acre portion of the other coterminous landowner's land, the case was an adverse-possession case, not a boundary-line dispute).

[2]The Ballard parties assert for the first time on appeal that the lease executed in 1990 and renewed each year thereafter until 2022 is ambiguous and that the disputed parcel is not within the scope of the

Because EBSCO held legal title to the disputed parcel, Ballard's use of the parcel under the lease was merely permissive and, generally, could not ripen into adverse possession. See Moss v. Woodrow Reynolds & Son Timber Co., 592 So. 2d 1029, 1031 (Ala. 1992) (noting that, "[g]enerally, possession of land entered into with the permission of the owner will not ripen into title"). "To change a permissive or otherwise nonhostile possession into one that is hostile, there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed." White v. Williams, 260 Ala. 182, 187, 69 So. 2d 847, 851 (1954). The trial court noted that it was undisputed that Ballard had not given EBSCO actual notice of his disavowal of EBSCO's rightful title. Nonetheless, the trial court concluded that the acts that Ballard had committed on the disputed parcel were so hostile and notorious that actual notice could be presumed. We need not reach a determination as to whether the acts Ballard committed on the disputed parcel were hostile or so notorious as to make

_____

lease. It is well settled that an appellate court will not consider an argument presented for the first time on appeal. See ITEC, Inc. v. Automated Precision, Inc., 623 So. 2d 1139, 1140 (Ala. 1993) ("Issues not raised before the trial court will not be considered for the first time on appeal.").

8

actual notice of those acts presumed. As previously noted, approximately two years before Ballard purchased the property adjoining the EBSCO property, he entered into a lease with EBSCO to hunt on the EBSCO property. The leased property included the disputed parcel. Because Ballard paid rent for the leased property from March 1990 until February 2022, his use of the leased property was merely permissive and could not, as a matter of law, have been hostile until March 2022 at the earliest. It is undisputed that Ballard performed no acts on the disputed parcel after February 2022. See Williams v. White, 207 So. 3d 59, 65 (Ala. Civ. App. 2016) ("Because White paid rent for the leased property until at least 2003, his possession of the leased property could not, as a matter of law, have been hostile until 2003, at the earliest."); Calhoun v. Smith, 387 So. 2d 821, 824 (Ala. 1980) (noting that "the prescribed period of time for adverse possession will not begin to run until notice of the adverse claim, or hostility, has been brought home to the true owner"); and Stewart v. Childress, 269 Ala. 87, 93, 111 So. 2d 8, 13 (1959) ("Limitations begin to run from the date of notice of hostility but are not operative before hostility is shown."). Thus, the trial court's finding that the Ballard parties owned the disputed parcel through adverse possession as early as

9

2012 is plainly and palpably wrong. A lease establishes land use by a tenant with the permission of the landlord. It is impossible for property subject to a lease to be acquired by adverse possession until after the leasehold interest terminates. Permissive use in and of itself cannot be hostile regardless of whether provisions of a lease are breached. Here, as long as Ballard continued to pay rent, his use of the disputed parcel was permissive and could not ripen into a possessory interest through adverse possession. Any acts of hostility could be counted toward a claim of adverse possession only after the lease terminated. Accordingly, the judgment awarding the Ballard parties ownership of the disputed parcel is reversed, and the cause is remanded for proceedings consistent with this opinion.

## IV. Conclusion

For the reasons set forth above, we reverse the judgment of the trial court awarding the Ballard parties ownership of the disputed parcel.

REVERSED AND REMANDED.

Wise, Mendheim, and McCool, JJ., concur.

Sellers, J., concurs specially, with opinion.

10

Cook, J., concurs in part and concurs in the result, with opinion.

Shaw, J., concurs in the result, with opinion, which Stewart, C.J., and Lewis, J., join.

Bryan, J., concurs in the result.

SELLERS, Justice (concurring specially).

Although I am the author of the main opinion, I write specially to note that, over the last several years, this Court has reviewed and issued a number of decisions in cases in which parties purchasing real property failed to obtain surveys, relying instead on an "assumed" boundary line based on any number of tangible markings, fence lines, tree lines, or changes in topography of the land. Perhaps the worst cases we have seen are those in which a boundary line was assumed and the construction of a house or other improvements was commenced based on that assumption, which turned out to be incorrect. For example, in Haag v. Wilson Properties, LLC, [Ms. SC-2024-0405, May 2, 2025] ___ So. 3d ___ (Ala. 2025), the plaintiff purchased land, believing that a series of red flags tied to trees marked the boundary line between his property and the defendant's property. The flags had actually been placed by the previous owners for tree-clearing purposes and had no relation to the boundary line of the properties. After the plaintiff constructed a house and other improvements on what he thought was his property, the defendant informed the plaintiff that he believed that a portion of the plaintiff's house encroached on his property. The plaintiff hired a land

12

surveyor to ascertain the true boundary line of the properties; that survey confirmed that some of the plaintiff's improvements had in fact been made to the defendant's property. The trial court ultimately granted the plaintiff an easement to use a portion of the defendant's property. This Court affirmed the judgment without issuing an opinion, and I concurred specially. In Morrison v. May, [Ms. SC-2023-0112, Oct. 6, 2023] ___ So. 3d ___ (Ala. 2023), the Mays purchased a lot, including a house, without obtaining a survey. At the time they purchased the lot, the Mays believed that the house, the driveway, and an outbuilding were located on that lot. But, according to a court-ordered survey, they discovered that approximately 15 feet of the house, the driveway, the outbuilding, and a gazebo encroached upon the majority of an adjoining lot owned by Morrison. Morrison requested that the trial court enter a permanent injunction ordering that the structures encroaching upon her lot be removed. Rather than issuing a permanent injunction forcing the Mays to remove the encroachments and to demolish a portion of their house, the trial court exercised its equitable powers and ordered the Mays to reimburse Morrison the amount that she had paid for her lot, the taxes and interest paid thereon, attorney fees, and one-half of the cost of the

court-ordered survey and appraisal. Thus, although obtaining a survey may seem like a needless closing cost, having one avoids future headaches, dissension among neighbors, and litigation costs. In this case and the other cases, a survey conducted at the time of purchase or commencement of construction would have established the boundary line, defined the area of property owned, and eliminated the costs, uncertainty, and anxiety of asking a court to impose a remedy when an assumed line of demarcation turns out to be incorrect and not the legal boundary of the property.

COOK, Justice (concurring in part and concurring in the result).

With the exception of note 2, I fully concur with both the reasoning and the conclusion reached in the main opinion. It is my view that if property is encompassed within an existing lease, the lessee cannot establish an adverse-possession claim. The appellees, Michael R. Ballard, Ballard Contractors, Inc., and MRB Farms, LLC ("the Ballard parties"), certainly have not cited any legal authority that suggests that an adverse-possession claim can exist in such circumstances.

However, I disagree with the main opinion's assertion in note 2 that because the Ballard parties have argued for the first time on appeal that the lease is ambiguous and that the disputed parcel is not within the scope of the lease, we cannot consider that argument in evaluating the merits of the appeal. See ___ So. 3d at ___ n.2. First, contrary to this assertion, the record before us appears to indicate that the Ballard parties raised this argument in a posttrial brief that was filed before the Tuscaloosa Circuit Court entered its judgment. Second, even if the Ballard parties were raising this argument for the first time on appeal, as the appellees, they can usually make that argument to us even if they did not make the argument below. See generally Liberty Nat'l Life Ins.

15

Co. v. University of Alabama Health Servs. Found., P.C., 881 So. 2d 1013, 1020 (Ala. 2003) (explaining that, subject to certain due-process exceptions, we may affirm a judgment on any "valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court").

Regardless, even if we were to assume that the lease is ambiguous, the trial court heard all the evidence and found that the lease included the disputed parcel. This factual finding about what property is encompassed within the lease is entitled to an ore tenus presumption of correctness. See Kennedy v. Boles Invs., Inc., 53 So. 3d 60, 68 (Ala. 2010) ("'"[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence."'" (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So. 2d 791, 795 (Ala. 2000), quoting in turn Raidt v. Crane, 342 So. 2d 358, 360 (Ala. 1977))).

Despite this factual finding, however, the trial court concluded that

16

the Ballard parties had acquired the disputed parcel by adverse possession. Because it is not possible for the lessee to adversely possess property that is being leased, the trial court's conclusion of law is incorrect. I therefore agree with the main opinion that its judgment in the Ballard parties' favor must be reversed. See Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005) ("'[T]he ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.'" (quoting Waltman v. Rowell, 913 So. 2d 1083, 1086 (Ala. 2005))).

SHAW, Justice (concurring in the result).

I respectfully concur in the result.

A "hunting lease" does not necessarily create a leasehold interest. "The fact that [an] agreement is entitled 'Hunting Lease' is not dispositive if in fact the instrument shows that the parties created something other than a lease." David Lee Boykin Fam. Tr. v. Boykin, 661 So. 2d 245, 249 (Ala. Civ. App. 1995). The right to hunt upon the land of another can be considered a lease, a "profit à prendre," an easement, or a license. Id. at 250-51. It depends on the language of the "lease." Id.[3]

Setting aside the nature of the interest created by the hunting lease in this case, the trial court held that it was "disavowed": "[T]he evidence presented at trial established that [the defendant] committed the type of acts that should have made his disavowal presumed." Generally, permissive possession of land can be repudiated and changed to adverse or hostile possession.

> "In order to change possession from permissive to adverse, the possessor must make a clear and positive disclaimer or repudiation of the true owner's title. The possessor must give

---

[3]The "hunting lease" at issue in Boykin was determined to be a "license coupled with an interest." 661 So. 2d at 251.

18

the true owner actual notice of such disavowal, or he must manifest acts or make a declaration of adverseness so notorious that actual notice will be presumed."

Moss v. Woodrow Reynolds & Son Timber Co., 592 So. 2d 1029, 1031 (Ala. 1992). The repudiation, as Moss notes, must be clear.

In this case, the plaintiff contends that the defendants never repudiated the hunting lease, and thus did not convert their possession from permissive to hostile, because the defendants continued to renew and pay for the hunting lease annually until 2022. Annually renewing and paying for an agreement for permissive possession would appear antithetical to hostile and adverse possession. It negates "a clear and positive disclaimer or repudiation of the true owner's title" and undercuts any "actual notice" of disavowal or any acts or declarations of adverseness necessary to presume actual notice. Id. Cf. HealthSouth Rehab. Corp. v. Falcon Mgmt. Co., 799 So. 2d 177, 182 (Ala. 2001) ("Essentially, repudiation [of a contract] must amount to an unqualified refusal or declaration of inability to substantially perform the duties outlined in the contract."). This, coupled with the limited acts of hostile possession identified by the trial court, did not provide the requisite disavowal of the permissive use of the property or notice of such disavowal.

19

Stewart, C.J., and Lewis, J., concur.

# APPENDIX

