American Casualty Insurance Company, Inc. ("American Casualty"), filed a declaratory judgment action against Calvin W. Wright, d/b/a Wright Sons Trucking Company ("Wright"), Ralph Williams Associates ("Williams"), and John Green ("employee"), seeking to have its workmen's compensation insurance policy construed to determine whether there was coverage for Wright during an alleged period of lapse in that coverage. The trial court heard ore tenus evidence and found that American Casualty, by its conduct after knowledge of all the relevant facts, had waived its right to claim forfeiture of coverage under the policy for nonpayment of the renewal premium. American Casualty appealed.
Under the ore tenus rule, the trial court's decision, where supported by the evidence, is presumed correct and should be reversed only if the judgment is found to be plainly and palpably wrong, after a consideration of all the evidence and after making all inferences that can logically be drawn from the evidence. See City of Birmingham v. Sansing Sales ofBirmingham, Inc., 547 So.2d 464 (Ala. 1989); King v. TravelersIns. Co., 513 So.2d 1023 (Ala. 1987); Robinson v. Hamilton,496 So.2d 8 (Ala. 1986). The trial court's judgment will be affirmed if there is credible evidence to support the judgment. City ofBirmingham v. Sansing Sales of Birmingham, Inc., supra; McCraryv. Butler, 540 So.2d 736 (Ala. 1989); Jones v. Jones,470 So.2d 1207 (Ala. 1985).
The issue before us is whether the trial court's finding that American Casualty's conduct, after it had received late payment of the renewal premium, constituted a waiver of its right to claim forfeiture was plainly and palpably erroneous. We hold that the trial court's finding was not plainly and palpably wrong.
Judge J.B. Baird's order concisely presented the reasons for his decision; therefore, we adopt his order as part of our opinion:
 "The plaintiff, American Casualty Company, Inc., having filed its complaint for declaratory judgment in the above-styled cause, the case was heard by this Court, sitting without a jury, on August 30, 1988, at which time the parties presented evidence in the form of testimony, exhibits and deposition transcripts with attached exhibits.
 "The Court having heard the evidence, reviewed the exhibits and deposition transcripts with attached exhibits, makes the following findings of fact:
 "1. American Casualty Company, Inc., issued a workmen's compensation insurance policy to Calvin W. Wright, d/b/a Wright and Sons Trucking Company ("Wright") on August 19, 1986, effective through August 19, 1987.
 "2. American Casualty Company, Inc., offered to renew the policy if the renewal premium was received by August 19, 1987.
 "3. The premium was received by American Casualty Company, Inc., on September 1, 1987.
 "4. American Casualty Company, Inc., retained the premium payment.
 "5. John Green, an employee of Wright, was injured on August 25, 1987.
 "6. American Casualty Company, Inc., received actual notice of the injury on September 22, 1987.
 "7. On September 22, 1987, American Casualty Company, Inc., hired Rehabilitation Consultants, Inc. to perform medical services for the injured employee.
 "8. Rehabilitation Consultants, Inc., performed medical services for the benefit of the injured employee at the request of American Casualty Company, Inc. for approximately one (1) month.
 "9. By providing medical services to the injured employee, American Casualty Co., Inc., performed a duty required under the workmen's compensation insurance policy it issued to Wright.
 "10. On October 21, 1987, American Casualty Company, Inc., mailed notice informing Wright that it intended to apply the renewal premium payment prospectively from September 1, 1987. *Page 1017 
 WHEREFORE, the above premises considered, it is the finding of this Court that American Casualty Company, Inc., by its conduct after knowledge of all the relevant facts, waived its right to claim forfeiture of coverage under the policy for non-payment of the renewal premium.
 "It is therefore the ORDER and JUDGMENT of this Court that American Casualty Company, Inc., owes coverage to Wright under its workmen's compensation insurance policy for the injury to Wright's employee which occurred on August 25, 1987.
"DONE this the 11th day of October, 1988."
American Casualty contends that, because it accepted the renewal payment before it learned that the loss had occurred, it could not have waived its right to claim forfeiture of coverage, regardless of its subsequent conduct. Wright contends that American Casualty's conduct, after it had knowledge of all pertinent facts concerning the employee's injury, manifested an intent not to exercise its right to claim a forfeiture of coverage.
Whether there was a waiver by American Casualty is a matter of intent.
 "Probably there is no principle of insurance law more firmly settled, nor better grounded in justice and reason, than that an insurer, who receives and retains premiums, the very consideration for carrying the insurance risk, with knowledge of facts which, under stipulations for his benefit, would, in the absence of such knowledge, empower him to treat the policy as having never been in force, or as being no longer in force, will be held to have waived such stipulations. Waiver, strictly speaking, is a matter of intent. But, in such case, no proof of actual intent is required. Any other intent, in such case, would work a positive wrong or fraud on the insured. The law charges the insurer with the intent to waive under the doctrine of estoppel." (Emphasis added.)
Washington National Insurance Co. v. Scott, 231 Ala. 131, 132,164 So. 303, 305 (1935); see Alabama Farm Bureau MutualCasualty Ins. Co. v. Hicks, 272 Ala. 574, 133 So.2d 221 (1961).
 "Waiver . . . has been defined as the 'voluntary and intentional surrender or relinquishment of a known right.' Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala. 1984); see, also, City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967). An intention to waive a right may be found where one's course of conduct indicates such an intention or is inconsistent with any other intention. Braswell Wood Co. v. Fussell, 474 So.2d 67 (Ala. 1985); see, also, 28 Am.Jur.2d Estoppel and Waiver, §§ 158, 160 (1966)."
Ford v. Jackson Square, Ltd., 548 So.2d 1007 (Ala. 1989).
In Central National Insurance Group of Omaha v. Grimmett,340 So.2d 767 (Ala. 1976), we recognized the rule set out in Hicks, supra, that when an insurance company accepts payment for a premium on a lapsed policy with knowledge that an accident has occurred during the period of lapse, three options are available to the insurer. The insurer may: 1) return the premium for the lapsed period; 2) apply the premium from the date received forward; or 3) retain the premium and cover the loss. Before an insurance company can avail itself of the second option, however, the intent to apply the premium prospectively must be clearly conveyed to the insured before the premium is accepted. In both Grimmett and Hicks, we were dealing with cases in which the insurer had knowledge of the injury at the time it accepted payment of the past-due premium. In the instant case, however, it is undisputed that American Casualty did not have knowledge of the injury at the time it accepted the past-due premium.
As distinguished from Grimmett and Hicks, the insurance company in Inter-Ocean Insurance Co. v. Banks, 268 Ala. 25,104 So.2d 836 (1958), had no knowledge of the injury when it accepted payment of the past-due premium. In that case, we held that the acceptance of premiums after an injury, the nonpayment of which worked *Page 1018 
a forfeiture, does not of itself waive the delinquency if the insurer had no knowledge of such injury, since in such a case any waiver would not have been intentional.
Ultimately, however, the substance of the doctrine of waiver as applied in the law of insurance is that, if the insurer,with knowledge of facts that would bar liability, recognizes such liability by treating the policy as in force, it will not thereafter be allowed to plead such facts to avoid liability.Blue Cross-Blue Shield of Alabama v. Ramsey, 43 Ala. App. 496,193 So.2d 149 (1966). In the law of insurance, a waiver may be founded on estoppel, but it does not necessarily have to be. Although the conduct of the insurer may not have actually misled the insured to his prejudice or to an altered position, if, after knowledge of all the facts, the insurer's conduct has been such as to reasonably imply that it will not insist upon a forfeiture, the law, disfavoring forfeitures, will apply the doctrine of waiver and will hold the insurer irrevocably bound by an election to treat the insurance contract as if no forfeiture had occurred. American Ins. Co. v. Millican,228 Ala. 357, 153 So. 454 (1934).
The facts presented to the trial court were as follows:
Wright contacted Williams, an independent insurance agent (not an agent of American Casualty), requesting workmen's compensation coverage. Wright obtained workmen's compensation insurance coverage from American Casualty. The initial policy period was August 19, 1986, to August 19, 1987. Prior to the expiration of this initial policy, American Casualty issued a renewal notice to Wright by letter dated June 22, 1987. The letter reads in pertinent part as follows:
 "IN ORDER TO PROCESS YOUR RENEWAL IT IS ESSENTIAL THAT YOU RETURN ONE COPY OF THIS NOTE LETTER WITH YOUR RENEWAL PAYMENT. PLEASE SHOW YOUR POLICY NUMBER ON YOUR CHECK.
 "Your policy expires on 8-19-87. Your file has been reviewed and the renewal premium is $2436 based on our latest information. Please remember that this premium is subject to adjustment at the end of the policy period as a result of a final audit of your actual payroll.
 "If you feel that an adjustment is required in any of the payroll or classification information shown below, please indicate the proper information including an explanation for any changes. A revised quotation will not be issued; therefore, your renewal premium should be based on the anticipated payroll.
 "PAYMENTS MUST BE RECEIVED IN OUR READING, PENNSYLVANIA, OFFICE BY 8-19-87." (Emphasis added.)
It is undisputed that Wright's renewal premium was not received at the home office of American Casualty in Reading, Pennsylvania, by August 19, 1987. Rather, the premium was postmarked on August 31, 1987, and was received in the Reading office on or about September 1, 1987. The check was deposited by American Casualty on September 10, 1987.
On August 25, 1987, six days after the premium payment was due in the Reading office, one of Wright's employees was injured in an accident. The injury report was not received by American Casualty until September 22, 1987; this report was the first notice that American Casualty had of the August 25 accident. The case was assigned to an American Casualty claims specialist, who secured a rehabilitation consultant to supervise Wright's injured employee's medical care. The rehabilitation consultant visited the employee several times, consulted with the medical staff, coordinated information between the various providers of medical services, counseled with the employee and his family, and reported to the claims specialist on three separate occasions — September 20, 1987; October 8, 1987; and October 16, 1987 — detailing in each report the treatment she had arranged for the employee. The claims specialist received these reports and testified that the treatments were "precisely" the services that the rehabilitation consultant was hired to perform. *Page 1019 
After securing the first report of injury, the claims specialist informed Ms. Wright[1] that American Casualty would not pay workmen's compensation benefits to the employee if the employee continued to receive his salary. Thereafter, Ms. Wright, based on the conversation with the claims specialist, discontinued all future payments, except one for which a check had already been written.
On or after October 21, 1987, American Casualty mailed a letter to Wright notifying Wright for the first time that American Casualty had elected to treat the policy as lapsed between August 19, 1987, and September 1, 1987 (hereinafter referred to as "the defaulting period"), and that it had renewed the policy as of September 1, 1987, for the period extending to September 1, 1988. A new policy was not issued. On November 4, 1987, American Casualty notified Wright that it would defend Wright in the workmen's compensation suit filed by the injured employee, but that it was reserving all policy defenses under the conditions and terms of the policy. On November 17, 1987, Wright was notified by American Casualty that there was no coverage under the workmen's compensation policy and that American Casualty would file this declaratory judgment action.
The trial court could have found from the evidence that American Casualty's retention of the past-due premium payment covering the defaulting period, with knowledge of the August 25 accident and with knowledge that a workmen's compensation claim had arisen during that defaulting period, concomitant with its providing medical services over an extended period of time to the employee injured during the defaulting period and its delay in notifying Wright of its intent to treat the premium payment as providing prospective coverage only, was inconsistent with its intent to deny coverage during the defaulting period.
Therefore, we hold that the judgment of the trial court, holding that American Casualty by its conduct, after knowledge of all the relevant facts, waived its right to claim forfeiture of coverage under the policy for nonpayment of the renewal premium, was not plainly and palpably erroneous.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Ms. Wright worked in the office of Wright Sons Trucking Company.