[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17425
_____

D.C. Docket No. 1:15-cv-00726-WSD


AMANDA SUE SMITH,

Plaintiff – Appellant,


versus

UNITED STATES OF AMERICA,

Defendant – Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 23, 2017)

Before JULIE CARNES and JILL PRYOR, Circuit Judges, and ANTOON,[*]
District Judge.

ANTOON, District Judge:

_____

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida,
sitting by designation.

Amanda Sue Smith filed a three-count complaint against the United States under the Federal Tort Claims Act (FTCA) seeking damages arising from a soured business arrangement she entered into with an FBI confidential informant. The district court granted the United States' motion to dismiss for failure to state a claim, finding that Smith's claims had no basis under Georgia law and thus could not support FTCA liability. After careful review of the briefs and controlling law, and having the benefit of oral argument, we affirm.

## I.

Smith's claims arise out of a peculiar agreement she entered into with non-party Mani Chulpayev. Under the terms of the agreement, Chulpayev would select certain high-end cars for Smith to purchase from a dealership. Smith would finance the purchase price and then lease the cars to Chulpayev, who would use them in his rental car business. The lease payments Smith was to receive from Chulpayev were to exceed Smith's monthly loan and insurance payments on the vehicles, making the agreement financially advantageous to Smith. But things did not go as Smith planned. In July 2011, Smith purchased three cars for Chulpayev's use, but after four months Chulpayev stopped making monthly payments to Smith. Smith continued to make her monthly loan payments for two years but ultimately defaulted.

2

Meanwhile, by July 2012 Smith learned that for many years Chulpayev served as a confidential informant for the FBI and was still doing so when Smith agreed to purchase the cars for him.  Because of the FBI's relationship with Chulpayev, Smith made a claim against the FBI seeking compensation.  After exhausting administrative remedies, in 2015 Smith filed this FTCA suit, alleging that the United States caused her losses under the lease arrangement through negligence, deliberate indifference, and conversion.  Smith now appeals the district court's order dismissing the case for failure to state a claim.

## II.

The district court dismissed each of Smith's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss.  *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017).  In assessing the sufficiency of a claim, we accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Montgomery Cty. Comm'n v. Fed. Hous. Fin. Agency*, 776 F.3d 1247, 1254 (11th Cir. 2015).  But "[a] plaintiff must plausibly allege all the elements of the claim for relief. Conclusory allegations and legal conclusions are not sufficient; the plaintiff[] must 'state a claim to relief that is plausible on its face.'"  *Feldman v. Am. Dawn, Inc.*,

3

849 F.3d 1333, 1339–40 (11th Cir. 2017) (citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Under the FTCA, the United States can be held liable for negligent or wrongful acts or omissions of government employees only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Because the events at issue occurred in Georgia, we look to Georgia law in deciding this case. And because none of Smith's claims states a cause of action under Georgia law, we agree that the district court correctly dismissed all three counts of the second amended complaint.

a.    Count I—Negligence

Smith's primary claim sounds in negligence. Under Georgia law, the elements of a negligence claim are: "'(1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.'" *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982) (quoting *Lee St. Auto Sales, Inc. v. Warren*, 116 S.E.2d 243, 245 (Ga. Ct. App. 1960)). "The threshold issue in any cause of action for negligence is whether, and

4

to what extent, the defendant owes the plaintiff a duty of care." *City of Rome v. Jordan*, 426 S.E.2d 861, 862 (Ga. 1993). Although Smith maintains that the United States owed a duty to protect her from Chulpayev's conduct, Georgia law does not support the existence of any such duty.

The Supreme Court of Georgia explained in *Bradley Center* that "as a general rule, there is no duty to control the conduct of third persons to prevent them from causing . . . harm to others." *Bradley Ctr.*, 296 S.E.2d at 696. The *Bradley Center* court recognized a narrow exception to this rule where there is a "special relationship" between the defendant and a third party. Smith attempts to rely on that exception here, but her effort is unavailing.

Under the "special relationship" exception, "'[o]ne who takes charge of a third person whom he knows or should know to be likely to cause . . . harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.'" *Id.* (quoting Restatement (Second) of Torts § 319). The only Georgia cases that have recognized a "special relationship" sufficient to support a negligence claim involved situations where the defendant had control over the third party who injured the plaintiff—control that is lacking here. In *Bradley Center*, for example, the defendant was a private mental health hospital that issued an unrestricted weekend pass to a patient who then killed his wife and her lover. The Supreme Court of Georgia agreed with the

5

Georgia Court of Appeals' articulation of the legal duty breached by the hospital: "where the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient." *Id.* at 695–96.

Other Georgia cases addressing the "special relationship" exception have likewise focused on the defendant's degree of control. *Compare, e.g.*, *Associated Health Sys., Inc. v. Jones*, 366 S.E.2d 147, 152 (Ga. Ct. App. 1988) (holding that nursing home owed duty not to subject resident to unreasonable risk of harm at hands of co-resident with known propensity for violence), *with Trammel v. Bradberry*, 568 S.E.2d 715, 722 (Ga. Ct. App. 2002) (concluding that father whose schizophrenic adult son resided with him lacked physical control over son; the living arrangement did "not create either the right or exercise of physical control over the behavior of a mentally ill person necessary to create the special relationship"), *and Ermutlu v. McCorkle*, 416 S.E.2d 792, 794–95 (Ga. Ct. App. 1992) (finding that psychiatrist did not exercise sufficient control over voluntary outpatient and therefore no special relationship arose; distinguishing *Bradley Center*, which involved a voluntary outpatient). And this court has previously emphasized that "subsequent decisions applying [*Bradley Center*] have made it

6

clear that the 'control' that gave rise to the duty in that case was the 'legal authority' to restrain a person's liberty." *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1157 (11th Cir. 2011); *see also Keppler v. Brunson*, 421 S.E.2d 306, 307 (Ga. Ct. App. 1992) (describing, in the doctor-patient setting, the type of control required as "control over the freedom of a mental patient, or [] the legal authority to confine or restrain the patient against his will").

The allegations of control in Smith's second amended complaint fall well short of illustrating the degree or type of control required to create a duty under Georgia law. Smith alleges, in conclusory fashion, that the FBI had an "obligation and duty to protect third persons from the actions of those with whom it had a close personal relationship, over whom it exercised a degree of control." But a "close personal relationship" is not a "special relationship" under Georgia law, and "a degree of control" is insufficient. Smith does not allege any facts supporting an inference that the FBI had legal, physical, or custodial control over Chulpayev, and thus the second amended complaint does not allege a special relationship that could give rise to a duty here.[1]

Smith also attempts to ground her negligence claim in alleged violations of FBI Informant Guidelines and Department of Justice Confidential Informant

---

[1] Another panel of this court recently rejected similar arguments regarding the government's potential liability for Chulpayev's actions. *Frazier v. United States*, No. 16-15154, 685 F. App'x 730 (11th Cir. 2017).

Policies.  But Smith cites no support for the proposition that violations of internal federal guidelines and policies can give rise to a Georgia negligence claim, and indeed the law is to the contrary.  *See, e.g.*, *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006) ("Violating an internal policy or procedure does not create a cause of action under the FTCA against the government unless the challenged conduct is independently tortious under applicable state law."); *cf. Zelaya v. United States*, 781 F.3d 1315, 1324 (11th Cir. 2015) (noting that "the fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA" and that "a state tort cause of action is a *sine qua non* of FTCA jurisdiction").  Absent an actionable state law theory of liability, no FTCA claim will lie.

In sum, because Smith's negligence claim would not support a cause of action against a private person under Georgia law, it likewise does not support an FTCA claim against the United States.  The district court thus did not err in dismissing Smith's first claim.

b.  Counts II and III—Deliberate Indifference and Conversion

In her second claim, Smith alleged "deliberate indifference."  Smith cites no authority supporting the existence of a Georgia cause of action for deliberate indifference, and we find none.  The district court therefore properly dismissed this count for failure to state a claim for which relief could be granted.

Smith's third and final count alleged a claim under section 51-10-1 of the Official Code of Georgia for "deprivation of possession of personalty."  This provision "embodies the common law action of trover and conversion," which "'involves the unauthorized assumption and exercise of right of ownership over personal property of another, contrary to the owner's rights.'"  *Williams v. Ga. Dep't Corr.*, 791 S.E.2d 606, 610 (Ga. Ct. App. 2016) (quoting *Prof'l Energy Mgmt. v. Necaise*, 684 S.E.2d 374, 379 (Ga. Ct. App. 2009)).  Because Smith did not allege that the United States ever had actual possession of the vehicles, the district court correctly dismissed Count III.  *See Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1324 (11th Cir. 2016) (noting that elements of Georgia conversion claim include, among others, "actual possession of the property by the defendant").

**AFFIRMED.**

9