[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12693

Non-Argument Calendar

_____

BECKY K. SIMON,

Plaintiff-Appellant,

*versus*

USAA LIFE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cv-00125-ECM-CWB

_____

Before ROSENBAUM, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Becky Simon sued USAA Life Insurance Company for failure to provide benefits under a term life insurance policy her late husband purchased. USAA denied coverage because Simon's husband died two days after the policy had lapsed for nonpayment of the annual premium, and it returned Simon's late premium payment aimed at restoring coverage. Simon contends that USAA either waived or is barred from denying coverage by retaining her late premium for approximately 45 days, and that equitable tolling applies to excuse a payment missed due to incapacity of the insured. The district court rejected these arguments and granted summary judgment to USAA. After careful review, we affirm the district court.

## I.

Simon was the primary beneficiary of a $2 million 20-year-term life insurance policy from USAA held by her late husband, Jeffrey Simon, a pediatrician and former U.S. Navy Commander, with whom she raised five children. During his lifetime, Jeffrey handled all financial affairs in the Simon household, including paying the annual life insurance premium for nearly seventeen years.

Unfortunately, in 2018, Jeffrey was diagnosed with multiple sclerosis, an immune-mediated disorder that affects the body's central nervous system. Although he tried many treatment options, his condition deteriorated rapidly, and by early 2021, he was completely immobile, essentially nonverbal, and had severe cognitive

deficits.  In September 2021, the Simons left for a treatment facility in Mexico in the hope of obtaining some relief for his symptoms. Sadly, Jeffrey passed away in Mexico on October 5, 2021, at the age of 57.

When Simon returned home and began managing the household finances, she discovered that Jeffrey had failed to pay the premium due in August 2021 on his USAA life insurance policy, among other bills.  A letter from USAA dated September 2, 2021, notified Jeffrey that his coverage would lapse if he did not send his premium payment of $2,770 by October 2, 2021.  A follow-up letter dated October 3, 2021, a mere two days before Jeffrey's death, stated that the policy had lapsed.

On December 1, 2021, the day after she found the USAA letters, Simon mailed USAA a check for $2,770 as full payment for the missed premium.  Soon after, an attorney retained by Simon wrote a letter to USAA, informing the insurer that Simon had mailed the balance of the outstanding premium on December 1, 2021, that "[t]he payment was past due because [Jeffrey's] health was in critical condition," and that Jeffrey had died.

USAA received Simon's check on or about December 8, 2021, and deposited the funds.  On January 21, 2022, however, USAA sent Simon a letter notifying her that Jeffrey's policy had been terminated.  USAA also informed Simon that it would not provide death benefits under the policy.  Simon received a check from USAA for $2,770 on January 23, 2022, refunding the premium payment.

## II.

In January 2023, Simon sued USAA in Alabama state court, alleging that it had breached the contract and acted in bad faith by refusing to pay death benefits under the policy. USAA removed the case to federal court and then filed a motion to dismiss for failure to state a claim. USAA maintained that it was not liable under any of the causes of action asserted because the policy had lapsed for nonpayment before Jeffrey's death.

USAA submitted a copy of the policy at issue[1], which provided that "[i]f a premium is not paid when due, the policy will terminate except as indicated elsewhere in the policy." Other policy terms stated that, after a missed premium, the policy would remain in force for a 31-day grace period before lapsing. If the policy lapsed "due to nonpayment of premium," coverage could be reinstated upon receipt of the unpaid premium and "[e]vidence satisfactory to [USAA] that the Insured [was] still insurable."

Simon responded in opposition, contending that USAA had waived forfeiture of the policy for nonpayment by depositing and retaining her post-lapse premium payment, that equitable tolling

---

[1] We may consider the policy at the motion-to-dismiss stage because it is central to Simon's claims and its authenticity is not disputed. *See Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.").

excused the late payment due to Jeffrey's incapacity, and that USAA was equitably estopped from denying coverage.

The district court granted USAA's motion to dismiss. The court found that USAA did not waive its right to deny coverage under the policy because it had "returned Simon's overdue premium payment," that Alabama law did not support equitable tolling of the policy lapse date, and that USAA was not equitably estopped from denying coverage by temporarily retaining the overdue premium before returning it. Simon appeals.

## III.

We review *de novo* the grant of a motion to dismiss for failure to state a claim to relief. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). "In assessing the sufficiency of a claim, we accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor." *Id.* We may affirm the judgment on any grounds supported by the record. *Kernal Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

Simon does not dispute that the policy lapsed for nonpayment under its plain terms. But she contends that USAA cannot avoid coverage, relying on the doctrines of waiver, equitable estoppel, and equitable tolling.

## A.

In general, when an insurance policy states that failure to pay premiums causes the policy to lapse, the insured must either pay the premiums or lose coverage. *See Haupt v. Midland Nat'l Life*

*Ins. Co.*, 567 So. 2d 1319 (Ala. 1990). "[A]greements for the forfeiture of an insurance policy for nonpayment of premiums are valid and are enforceable by the insurer." *Grimes v. Liberty Nat'l Life Ins. Co.*, 551 So. 2d 329, 332 (Ala. 1989).

Nevertheless, "forfeitures for nonpayment of premiums are not favored" under Alabama law. *State Farm Mut. Auto. Ins. Co. v. Anderson*, 318 So. 2d 687, 689 (Ala. 1975). The right to insist on forfeiture may be waived by the insurer, and such waiver may be implied by conduct inconsistent with the intention to exercise it. *Id.* "[I]f the insurer, with knowledge of facts that would bar liability, recognizes such liability by treating the policy as in force, it will not thereafter be allowed to plead such facts to avoid liability." *Am. Cas. Co. v. Wright*, 554 So. 2d 1015, 1018 (Ala. 1989).

Thus, "it is settled that acceptance of premiums by an insurer, after learning of a breach of a condition or ground for forfeiture, normally constitutes a waiver or estoppel." *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1277 (Ala. 1993). When "an insurance company accepts payment for a premium on a lapsed policy with knowledge that an accident has occurred during the period of lapse," the insurer may do one of three things: "1) return the premium for the lapsed period; 2) apply the premium from the date received forward; or 3) retain the premium and cover the loss." *Wright*, 554 So. 2d at 1017. If the insurer chooses the first option, it "must return the premiums within a reasonable time to avoid waiver or estoppel." *Henson*, 621 So. 2d at 1277; *see Gen. Ins. Co. v. Killen*, 120 So. 2d 887, 897–98 (1960). *Accord Glezerman v. Columbian*

*Mut. Life Ins. Co.*, 944 F.2d 146, 154 (3d Cir. 1991) ("[R]etaining an overdue premium for an extended period of time is evidence that a policy has been reinstated."). What constitutes "a reasonable time ordinarily is a question of fact." *Killen*, 120 So. 2d at 897.[2]

Simon maintains that waiver or estoppel applies here because USAA accepted Simon's payment for the premium on Jeffrey's lapsed policy, with knowledge of his death, and then retained the premium for approximately 45 days.

Here, the district court did not err in concluding that neither waiver nor estoppel prevented USAA from denying coverage under Jeffrey's life insurance policy. It's undisputed that the policy lapsed on October 3, 2021, under its terms, for nonpayment of the annual premium due in August 2021. Thus, the policy, unfortunately, was not in force when Jeffrey died on October 5, 2021. USAA also provided timely advance notice that the policy would lapse if payment was not received within the grace period ending on October 2, 2021, even though Simon was outside the country at the time. The facts are certainly unfortunate. But we cannot say that any of USAA's conduct is inconsistent with an intent to exercise its right to insist on forfeiture for nonpayment.

---

[2] We reject USAA's argument that these waiver or estoppel rules do not apply when the insurance contract had already terminated when the accident occurred. *See Mobile Airport Auth. v. Health Strategies, Inc.*, 886 So. 2d 773, 783–84 (Ala. 2004) (rejecting a similar argument and holding that waiver may apply in circumstances where "no policy existed" or had been terminated).

We agree with Simon that the district court should have, but did not, consider whether the lapse of time between receipt and return of her past-due premium—approximately 45 days—was sufficient to warrant an inference that USAA had "elected to retain the money and thereby waive the forfeiture." *Sovereign Camp, Woodmen of the World v. Jones*, 66 So. 834, 836 (Ala. 1914). But while the question of "a reasonable time ordinarily is a question of fact," *Killen*, 120 So. 2d at 897, we cannot say that the lapse of time in this case, standing alone, is legally sufficient to support a finding of waiver or estoppel. *See Smith*, 873 F.3d at 1351.

Nothing in the complaint suggests that USAA acted with unreasonable delay in processing and returning the late premium payment within 45 days. Nor did USAA, during the time that it retained the premium, take any other action inconsistent with exercising its right to insist on forfeiture for nonpayment. *Cf. Nationwide Mut. Ins. Co. v. J-Mar Machine & Pump, Inc.*, 73 So. 3d 1248, 1253 (Ala. 2011) (rejecting a claim that the insurer had "waived its prior cancellation of the insurance policy by accepting [the insured's] check paying the premiums for the canceled insurance policy," where the insurer refunded the payment in accordance with the policy). Simon knew that the policy was not in force when she sent the late premium, and that the policy's terms of reinstatement required "[e]vidence satisfactory to [USAA] that the Insured [was] still insurable," and she heard nothing to the contrary from USAA. In these circumstances, the mere fact that USAA temporarily retained the premium does not plausibly suggest that it had "treat[ed] the policy as in force." *Wright*, 554 So. 2d at 1018.

The facts here are easily distinguishable from the cases Simon cites where Alabama courts have found waiver or estoppel by the insurance company based on delay in returning a premium. In *Henson*, for example, the insurer "continued to accept premiums on the policy until August 1989," after learning of a ground for rescission in February 1989, "and failed to tender the refund of the premiums until October 4, 1991," more than two years later. 621 So. 2d at 1275. Similarly, in *Killen*, the insurer returned the premium "over one year and six months from the time it was collected," which "came too late." 120 So. 2d at 897. Accordingly, neither *Henson* nor *Killen* supports a reasonable inference of waiver or estoppel in this case.

For these reasons, USAA was not barred by waiver or estoppel from denying coverage under the policy.

**B.**

Next, Simon relies on the doctrine of equitable tolling, arguing that it "may apply when an incompetent insured loses coverage due to their incapacity."

In extraordinary circumstances, equitable tolling may excuse a party's failure to comply with a time period specified by law. *Weaver v. Firestone*, 155 So. 3d 952, 957–58 (Ala. 2013); *Ex part Ward*, 46 So. 3d 888, 897 (Ala. 2007) (stating that equitable tolling applies in circumstances where "principles of equity would make the rigid application of a limitation period unfair"). In *Branch v. G. Bernd Co.*, for example, we held that equitable tolling applied to the "period

during which COBRA[3] allows a beneficiary to elect to continue coverage under a health plan." 955 F.2d 1574, 1576, 1582 (11th Cir. 1992). We reasoned that equitable tolling was necessary to "ensure that beneficiaries receive the full 60–day election period that Congress has required." *Id.* at 1582.

Simon's cited cases do not support her claim that equitable tolling can apply to excuse the failure to make a premium payment under an insurance contract during periods of incapacity. She does not suggest that any statute or regulation is at issue here, as in *Branch*. In *Bothwell v. Primerica Life Insurance Co.*, 444 F. Supp. 3d 1337, 1343 (N.D. Ala. 2020), the court concluded that equitable tolling was "simply inapplicable" to a life insurance contract, and that it did not permit the court "to treat the Policy as if it never lapsed" for nonpayment due to incapacity. And the decision in *Jefferson v. Reliance Standard Life Insurance Co.*, 818 F. Supp. 1523 (M.D. Fla. 1993), was vacated on appeal, 85 F.3d 642 (11th Cir. 1996) (unpublished table decision).

As much as we may wish to, we cannot grant relief in this case solely as a matter of equity. Simon's breach-of-contract and bad-faith claims against USAA are based on an insurance contract, and there is no provision in the contract for tolling of the due date for premium payments. *See Ex parte Alfa Mut. Ins. Co.*, 799 So.2d 957, 962 (Ala. 2001) (stating that "a breach of the insurance contract is an element" of a bad-faith claim against an insurance company).

---

[3] The Consolidated Omnibus Budget Reconciliation Act of 1985, *see* 29 U.S.C. §§ 1161–1168.

"[U]nder Alabama law, where there is no ambiguity in its terms, an insurance contract must be enforced as written." *Brock v. Old S. Life Ins. Co.*, 531 So. 2d 867, 870 (Ala. 1988). We cannot "rewrite the contract by judicial interpretation." *Id.*

For these reasons, we agree with the district court that equitable tolling does not apply here.

## IV.

In sum, we affirm the district court's grant of USAA's motion to dismiss.

**AFFIRMED.**